**PEPPERELL MANUFACTURING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 24955.

United States Court of Appeals
Fifth Circuit.

Nov. 13, 1968.
Rehearing En Banc Denied
Jan. 21, 1969.

Frank A. Constangy, Constangy & Prowell, Atlanta, Ga., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Elliott Moore, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Nan Bases, Atty., N. L. R. B., for respondent.

Before BELL and MORGAN, Circuit Judges, and GUINN, District Judge.

## LEWIS R. MORGAN, Circuit Judge:

This is a petition to review and a cross-petition to enforce an order of the National Labor Relations Board requiring the Pepperell Manufacturing Company located at Lindale, Georgia, to recognize and bargain with the union, Textile Workers of America. This appeal involves a review of the Board's decision as to two elections in the Pepperell Lindale plant. The issue arises in the context of a violation of Section 8(a) (5) and (1) of the National Labor Relations Act[1] in refusal to bargain. The Board set aside the first election which the Union had lost and upheld the second election which the Union had won. The petitioner, Pepperell Lindale, maintains that the Board erred in each instance.

On March 8, 1965, a Board election was held at Pepperell's plant in Lindale, Georgia. Of approximately 2,257 eligible voters, 959 voted for the Textile Workers Union of America and 1,155 voted against the Union. On March 12, 1965, the Union filed objections to the election with the Board. Following an investigation, the Regional Director found that union allegations of Pepperell threats of plant shutdown, layoffs, and refusal to sign agreement with the Union raised credibility issues which might best be resolved by recorded testimony at a hearing. At the hearing, held on September 1, 1965, evidence was presented by opposing parties.

From the hearing the following evidence was adduced by the Hearing Officer. About a week before the election, Supervisor Ned Johnson, referring to an Alabama textile mill which had closed down, told a group of employees, "See what happened at this mill, now if the Union comes in, this could happen to us." Johnson also admittedly spoke of the possibility of a plant shutdown to each of the 15 to 18 men he supervised. Supervisor Edward Wood told a group of employees a few days before the election, "These people don't know what they're getting into. If the Union comes in, the Company will start moving the machinery out". Wood admittedly discussed with each of the 30 men under his supervision the management rights clause contained in another company's contract and told them that if the Union should come in, Pepperell would sign a contract similar to this one which reserved the right to close and move the machinery out. Finally, evidence was introduced to prove that the night before the election, Supervisor Haden Smith approached an employee, Joe Lewis, and told him not to vote for the Union because if the Union came in, the Company would close down the plant, take out the machines and ship them somewhere else. The Company also engaged in an intensive electioneering campaign, with materials posted on bulletin boards, as well as speeches and leaflets. A major emphasis was on plant closings following unionization.

On June 13, 1966, the Board ordered that the first election be set aside, affirming the Hearing Officer's findings of threats and adding that "we also rely on the overall impact of such conduct when viewed in the light of the Employ-

1. 29 U.S.C. § 158(a) (1) and (5).

er's antiunion campaign, * * *, emphasizing the inevitability of a strike and the certainty of economic loss to the employees if they chose Petitioner as their collective-bargaining representative". The Regional Director scheduled a second election.

The second election was held on August 4, 1966, and 1,139 voted for the Union and 917 against. Pepperell objected to this election on the grounds that the Union had distributed a newspaper article and leaflets which made material misrepresentations to which the Pepperell Manufacturing Company had no opportunity to reply, and which affected the election outcome. The newspaper advertisement was published on July 31, 1966, in the Rome News Tribune which is widely read by the employees of Pepperell. The message of this ad was reprinted in a leaflet which was distributed by the Union to the Pepperell employees on August 3, 1966, the day before the election. These misrepresentations concerned wages in surrounding union companies and were as follows:

| Company | Alleged Rate | Actual Rate |
| --- | --- | --- |
| G. E. | $3.21 | $2.91 |
| Kraft | 3.10 | 2.86 |
| Inland Container | 2.75 | 2.54 |

The Regional Director recommended that the Board overrule Pepperell's objections on the grounds that even assuming the figures used by the Union were inaccurate, they were either de minimis or Pepperell had adequate time to reply. The Board agreed with the Regional Director and certified the Union as the exclusive bargaining representative.

About January 10, 1967, the Union requested recognition on the basis of its certification. Upon Pepperell's refusal, a Section 8(a) (5) charge was filed and a complaint was issued. Pepperell in its answer, denied any violation of Section 8(a) (5) of the National Labor Relations Act. The Trial Examiner granted a motion for summary judgment in favor of the Union. The Board adopted the Trial

Examiner's decision and recommended order, finding Pepperell in violation of Section 8(a) (5) and (1) of the National Labor Relations Act. The order requires Pepperell to cease and desist from the unfair labor practices found, to bargain with the Union upon request, and to post appropriate notices. It is from this order Pepperell appeals.

██ The Board has wide discretion in its conduct and supervision of elections. Determination whether union representation election was fairly or unfairly conducted and should be set aside is primarily for the National Labor Relations Board. Thus, the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion. Neuhoff Bros. Packers, Inc. v. N. L. R. B., 362 F. 2d 611 (5 Cir., 1967).

As to the issue of the invalidation of the first election, we are in accord with the order of the Board. One prime thrust of Pepperell's campaign was that selecting the Union meant a plant shutdown and consequent economic disaster. Against this background, the employees had, as the dominant affirmative statement as to what Pepperell would do, the statements of three supervisors to the 50-odd employees under them that the plant would be closed down.

██ Judicial review of the conduct of consent elections is limited to ascertaining whether the Board's determination is within reasonable bounds. N. L. R. B. v. Laney & Duke Storage Warehouse Co., 369 F.2d 859 (5 Cir., 1966); N. L. R. B. v. Houston Chronicle Publishing Co., 300 F.2d 273 (5 Cir., 1962). On the record, the Board concluded that the threats, coupled with the literature described, impaired the freedom of the employees to make an unfettered choice and set the election aside as not truly representing the untrammeled will of the Pepperell employees. Our duty is to determine if this conclusion is reasonably drawn from the circumstances surrounding the election. In a careful review of the record, we conclude that the Board

has not abused its discretion, and the first election was properly set aside.

Pepperell filed objections to the second election contending that the Union campaign propaganda was a material misrepresentation to which it did not have adequate time to reply. In Anchor Manufacturing Co. v. N. L. R. B., 300 F.2d 301 (5 Cir., 1962), this Court found the basic issue in cases such as this to be "whether such false statements as may have been made *in fact* constituted an interference with a free choice of bargaining representatives; it is obvious that every false statement does not". The Board contends that the message which the Union sought to advance was that the textile industry was lagging behind other unionized industries as to wage rates. With this as the central message and the Pepperell employees receiving an average of $1.80 an hour, the Board found the 20- to 30-cents discrepancies listed above as not in fact constituting any real interference.

█ █ The Court, in discussing the area of misrepresentation during elections campaigns has adopted three criteria used by the Board: (1) Is the misrepresentation of a material fact? (2) Did the misrepresentation come from a party who has special knowledge of the true facts? and (3) Did the opposing party have sufficient opportunity to correct the misrepresentation? Anchor Manufacturing Company v. N. L. R. B., supra. Other courts have approved these criteria. N. L. R. B. v. Allen Manufacturing Co., 364 F.2d 814 (6 Cir., 1966); United Steelworkers of America v. N. L. R. B., 393 F.2d 661 (7 Cir., 1968). In application of the facts of this case to the standards recited, we fail to recognize any interference resulting from the misstatements. In examining these misrepresentations, this Court has recognized that the true principle "is not that when false statements are made they constitute an interference with free choice, but that when false statements are made which constitute an interference with free choice * * * an election should be set aside". Anchor Manufacturing Co. v. N. L. R. B., supra. Since the hand-

out leaflet was the same as the Sunday newspaper advertisement and the Company had ample time to answer the newspaper article, we conclude that Pepperell has failed to establish the requisite unfairness in the conduct of the election.

The findings and conclusions of the Board having support in substantial evidence on the record considered as a whole, Pepperell's petition is denied. The cross-petition for enforcement is granted.

Order enforced.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.