**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**GOLDEN AGE BEVERAGE COMPANY,
Respondent.**

**No. 26286.**

United States Court of Appeals
Fifth Circuit.

July 7, 1969.

🔑599

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Frank H. Itkin, Julius Rosenbaum, Attys., N.L.R.B., Washington, D. C., Clifford Potter, Director, Region 23, N.L.R.B., Houston, Tex., for petitioner.

Glenn L. Greene, Jr., W. Reynolds Allen, Miami, Fla., for respondent; Fowler, White, Collins, Gillen, Humkey & Trenam, Miami, Fla., of counsel.

Before THORNBERRY and SIMPSON, Circuit Judges, and CASSIBRY, District Judge.

CASSIBRY, District Judge:

This case is before the Court on the petition of the National Labor Relations Board (Board) for enforcement of its order that respondent Golden Age Beverage Company (Company) bargain with a Teamster's local union [1] (Union) certified by the Board after a representation election as the exclusive collective bargaining agent of certain of the Company's employees. As a defense to its refusal to bargain with the Union, the Company questions the fairness of the representation election and the refusal of the Board to grant a hearing to consider the Company's objections. We must resolve whether the Board, by overruling the Company's objections to the representation election without a hearing, acted within its wide degree of discretion and consistently with the requirements of procedural due process.

Because representation proceedings are not directly reviewable by the courts, this case reaches us by the circuitous procedure where an employer, in order to secure judicial review of his objections to a representation election, refuses to bargain with a certified union, thus committing an unfair labor practice in violation of Section 8(a) (5) and (1) of the Labor Management Relations Act, 29 U.S.C. § 158(a) (1), (5) (1964), and causing the Board to issue an order to bargain requiring judicial enforcement. United States Rubber Co. v. N.L.R.B., 373 F.2d 602, 603, n. 3 (5th Cir.1967). The facts adhere to the usual pattern in such cases.

Following a consent election won by the Union by a vote of 11 to 5, the Company filed objections to employee and union conduct allegedly interfering with and coercing the employees to such an extent that they could not exercise a free choice in the election. It was charged that the Union (1) promised unusually high wage rates, (2) prompted employees to engage in unlawful electioneering at the polling area, (3) misrepresented that all employees would have to be Union members to retain their jobs, and (4) threatened some employees with physical violence if they did not vote for the Union.[2] Pursuant to Section 102.69(c) of the Board's Rules and Regulations, 29 C.F.R. § 102.69(c), the Regional Director conducted an *ex parte* administrative investigation of the Company's objections. Employee affidavits were taken and both parties were permitted time to submit all pertinent evidence. In his report to the Board detailing the Company's objections, the supporting and opposing evidence, and his findings of fact and conclusions of law, the Regional Director found no merit in the objections and recommended that they be overruled. The Company thereafter filed exceptions to the Director's report with the Board, contending that the Board should order the Regional Director to conduct a hearing. Finding that the objections raise "no material or substantial issues of fact or law", the Board denied a hearing, adopted the Director's report, and certified the Union as the exclusive bargaining representative for the employees in the unit.

Notwithstanding the certification by the Board, the Company refused to recognize and bargain with the Union. Unfair labor practice charges were filed with the Board, and a complaint issued charging a refusal to bargain in violation of the Act. The Company's defense

---

1. General Drivers, Warehousemen & Helpers Local Union No. 968, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

2. Six objections were actually filed by the Company, but for the purposes of this discussion they are best reduced to the four categories outlined in the text.

was predicated upon the unlawful certification of the Union because of the failure of the Board to order a new election, or at the very least, to direct a hearing to resolve the factual issues raised by the objections. General Counsel for the Board moved for summary judgment on the pleadings, noting that the Company's objections had been previously litigated in the representation proceedings. The Company opposed the motion and requested that a hearing be held on the complaint, at which time it "could prove numerous other illegal and improper acts" by the Union. None of these acts, however, were specified; nor was there any indication that such evidence was newly discovered or previously unavailable. In accordance with the Board's rule that, absent newly discovered evidence, the Board's disposition of the representation matters is the law of the case, the Trial Examiner denied a hearing. See Pittsburgh Plate Glass Co. v. N.L.R.B., 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251, 1263 (1941); Collins & Aikman Corp., 160 N.L.R.B. 1750 (1966). All material issues having been decided by the Board, the Trial Examiner granted the General Counsel's motion for summary judgment holding the Company's refusal to bargain a violation of Section 8(a) (5) and (1) of the Act. The Board adopted his determination and ordered the Company to bargain with the Union. Enforcement of the order is sought in this proceeding.

The Company asserts three grounds, any one of which, if valid, would prevent enforcement of the order to bargain. First, it is contended that the objections raised require that the election be set aside, or second, that at least a hearing be held to resolve factual disputes. Third, the Company urges that the Board erred in refusing to include as part of the record on appeal the employees' affidavits taken by the Board's investigator in the course of the administrative investigation, or to allow the Company access to those affidavits.

We shall first consider whether the Board should have set aside the representation election because of the conduct alleged in the Company's objections.

Certain well established principles guide this inquiry. Most important is the wide discretion Congress has entrusted to the Board in its conduct and supervision of elections, N.L.R.B. v. Huntsville Manufacturing Co., 203 F.2d 430, 434 (5th Cir.1953), and the considerable weight which must therefore be accorded the Board's findings, with judicial review narrowly limited to ascertaining only their reasonableness. N.L.R.B. v. Laney & Duke Storage Warehouse Co., 369 F.2d 859, 864 (5th Cir. 1966). As this Court said in Pepperell Manufacturing Co. v. N.L.R.B., 403 F.2d 520 (5th Cir.1968), cert. denied, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 238 (May 26, 1969), "Determination whether union representation election was fairly or unfairly conducted and should be set aside is primarily for the National Labor Relations Board. Thus, the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion." 403 F.2d at 522, citing Neuhoff Brothers, Packers, Inc. v. N.L.R.B., 362 F.2d 611 (5th Cir.1967). Because it is for the Board to decide if the conduct charged reasonably tends to inferfere with the employees' free choice, N.L.R.B. v. Dallas City Packing Co., 251 F.2d 663 (5th Cir.1958), this Court, in reviewing this decision, "must be slow to overrule a discretionary determination by the Board." Neuhoff Brothers, Packers, Inc. v. N.L.R.B., *supra* 362 F.2d at 616. Whether this Court would reach the same conclusion as the Board from the conflicting evidence is immaterial, so long as the Board's finding that the election was fairly conducted is supported by substantial evidence in the record considered as a whole. N.L.R.B. v. Waterman Steamship Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 496, 84 L.Ed. 704, 716 (1940); Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456, 462 (1951); Anchor Manufacturing Company v. N.L.R. B., 300 F.2d 301, 303 (5th Cir.1962).

■ Further, in reviewing the Board's disposition of the Company's objections to the election, it "must be kept in mind that the burden is on the party objecting to the conduct of the representation election to prove that there has been prejudice to the fairness of the election." Southwestern Portland Cement Co. v. N.L.R.B., 407 F.2d 131, 134 (5th Cir.1969), pet. cert. filed, 37 U.S.L.W. 3444 (May 14, 1969). *See also* N.L.R.B. v. Ortronix, Inc., 380 F.2d 737, 740 (5th Cir.1967); N.L.R.B. v. O.K. Van Storage, Inc., 297 F.2d 74, 75 (5th Cir.1961). This is a heavy burden; it is not met by proof of mere misrepresentations or physical threats. Rather, specific evidence is required, showing not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. *Cf.* Southwestern Portland Cement Co. v. N.L.R.B., *supra* 407 F.2d at 134; Anchor Manufacturing Co. v. N.L.R.B., *supra* 300 F.2d at 303.

With these guidelines, we proceed to consider the Company's objections and whether the Board should have set aside the election.

■ In his Report and Recommendations on Objections, the Regional Director summarized the evidence presented by the Company in support of its first objection charging the Union with promising unusually high wage rates as follows:

"* * * the [Company] presented two employee witnesses, one of whom stated that should the [Union] win the election, there would be some changes in pay and that the union would get time and a half for the employees for Saturday work. The other employee stated that a fellow employee told him that should the union come in the [employees] could expect to draw time and a half for all over 40 hours, and double time for working Saturdays and holidays."

Concluding that these statements fell within the category of customary and legally unobjectionable preelection propaganda used by unions in an organizational campaign, the Regional Director overruled the objection. We do not disturb this conclusion.

■ From its supervision and review of thousands of representation elections each year, no area is more within the expertise of the Board than the proper limits of campaign propaganda and the impact of employer and union statements upon the employees' exercise of free choice. The Board, in applying this expertise, has not followed a "double standard" or abused its discretion, as the Company charges, by uniformly holding that a promise of increased or improved benefits by an employer to induce employees to reject a union is objectionable conduct, while similar promises on the part of a union are not. An employer in an unorganized plant, with his almost absolute control over employment, wages, and working conditions, occupies a totally different position in a representation contest than a union, which is merely an outsider seeking entrance to the plant. The opportunity for employer domination and misrepresentation is manifest; a finding by the Board, that his promises of benefit have an impact materially affecting the employees' free choice, while the union's do not, is not arbitrary or capricious or without a substantial basis in fact.

■ The Company's second objection alleged wrongful electioneering prompted by the Union during the voting hours.[3] The Company produced five employee witnesses who testified to employee solicitation of support for the Union both before and during the actual polling. Electioneering *before* the time set for the voting is not unlawful and was properly disregarded by the Region-

---

3. Also alleged was a threat of physical violence made during the time immediately preceding the election. We shall defer, however, our consideration of the Regional Director's treatment of this charge until the discussion of the Company's fourth objection, which deals with similar threats made during the campaign.

al Director. Mutual Distributing Company, 83 N.L.R.B. 463 (1949). With respect to the alleged solicitation *during* the time set aside for the election, the Regional Director found that the electioneering, if it occurred, did not destroy the atmosphere necessary to the exercise of a free choice in the representation election. He, accordingly, overruled the objection.

■ This determination is clearly within the wide scope of discretion accorded by Congress to the Board and its agents, and is amply supported by the record, which contains no evidence of unfairness, coercion, or disruption, but only bare unsupported assertions of such effects by the Company. In this matter we shall not second-guess the Board, which is closely attuned to the election from the time when the petition is first filed, and thus is in a better position to hear and decide questions concerning the fairness of the election process.

In support of its third objection, the Company presented only one witness who stated that a Union representative told him that should the Union win the election an employee would have to join the Union. This misrepresentation, which the named Union representative categorically denied having made, was allegedly uttered before a group of about twelve of the Company's employees. Because it was undisputed that the alleged conversation preceded the filing of an election petition, the Trial Examiner, assuming *arguendo* that the misrepresentation was made, nevertheless overruled the objection relying upon the Board rule announced in Ideal Electric & Manufacturing Company, 134 N.L.R.B. 1275 (1961), that makes misconduct occurring prior to the filing of an election petition irrelevant to the determination of whether the election should be set aside.

■ Designed to eliminate from post-election consideration conduct too remote to have prevented the employees' exercise of free choice, this rule was reasonably applied in these circumstances. *Cf.* N.L.R.B. v. Lawrence Typographical Union, 376 F.2d 643, 652–653 (10th Cir.1967). *See also* Rockwell Manufacturing Co., etc. v. N.L.R.B., 330 F.2d 795 (4th Cir.1964), cert. denied, 379 U.S. 890, 85 S.Ct. 161, 13 L.Ed.2d 94 (1964). In any event, the Company apparently had ample opportunity to rebut the misrepresentation, and cannot now assert prejudice because of its failure to do so. Anchor Manufacturing Co. v. N.L.R.B., *supra* 300 F.2d at 303. Furthermore, it is not unlikely that the alleged misrepresentation of mandatory union membership, if it had any effect at all on the employees' free choice, inured to the benefit of the Company rather than the Union. In sum, considering the remoteness of the alleged statement from the election, as well as its ambiguous effect, if any, on the results, the Board did not abuse its discretion when it determined this objection to be without merit. *See* Linn v. United Plant Guard Workers, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966).

The most serious objections asserted by the Company were those dealing with alleged threats of physical violence. Several employee witnesses provided conflicting statements as to a threat of physical violence made during the time immediately preceding the voting. Another employee reported a conversation on the day before the election in which an employee told a group of seven or eight employees that anyone who did not support the Union *should* be "whipped." And finally, one employee stated that he received an anonymous note about two weeks before the election which stated, "Vote Union or when we get a union you will lose your job."[4] Finding no evi-

---

4. One employee witness also stated that approximately three weeks before the election an unidentified supporter of the Union told him that "something bad" would happen to him if he did not support the Union. But, according to the employee, this was later explained by the unknown individual in terms of pay scales.

dence that the alleged threats were attributable to agents of the Union or had been condoned or adopted by the Union, and more importantly, finding no evidence that the alleged threats created a general atmosphere among voting employees of confusion and fear of reprisal for failing to vote for or to support the Union, the Regional Director overruled the objection.

■■ This conclusion was not unreasonable inasmuch as the ultimate question here is not whether any improprieties occurred during the campaign, but whether, in the circumstances, the particular conduct complained of "created an environment of tension or coercion such as to preclude employees from exercising a free choice. For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls." N.L.R.B. v. Zelrich Company, 344 F.2d 1011, 1015 (5th Cir.1965). The Company has made no such showing here, and the Board's refusal to set aside the election because of alleged threats of physical violence was well within its discretion.[5]

Having reviewed all the objections raised by the Company and the Board's disposition of them, we find the Company failed to carry its burden of proving that the election should be overturned, and that the Board's refusal to set aside the election was within its discretion and is supported by substantial evidence on the record as a whole.

We turn now to consider the argument that the Board, by overruling the Company's objections without directing an evidentiary hearing, deprived the Company of adequate opportunity to carry the burden of proving its case.

■ The Labor Management Relations Acts makes no provision for a post-election evidentiary hearing in a representation proceeding. In its Rules and Regulations, however, the Board provides for such a hearing when the objections raise "substantial and material factual issues" which can be resolved only after a hearing. 29 C.F.R. § 102.-69(c), (e). Otherwise an administrative investigation will suffice. This qualified right to a hearing is designed to resolve expeditiously questions preliminary to the establishment of the bargaining relationship and to preclude the opportunity for protracted delay of certification of the results of representation elections. N.L.R.B. v. O.K. Van Storage Company, 297 F.2d 74, 76 (5th Cir.1961).

■ This procedure comports with all statutory and constitutional due process requirements. N.L.R.B. v. Air Control Products of St. Petersburg, Inc., 335 F.2d 245, 249 (5th Cir.1964). It provides for an opportunity to submit affidavits and other pertinent evidence proving the existence of factual issues which would warrant a hearing, an independent investigation, including the taking of affidavits, by the Regional Director, a written report discussing the evidence submitted and delineating the Regional Director's findings and recommendations, and the taking of exceptions to this report to the Board, where the entire matter is independently reviewed. If the objecting party shows, by specific evidence which prima facie would warrant setting aside the election, the existence of substantial and material factual issues which can be resolved only after

---

5. We deem it immaterial that the incidents cited by the Company involved rank-and-file employees, none of whom were alleged to be Union officials. Though the conduct in question cannot be attributed to the Union absent proof that it was authorized, participated in, condoned, ratified, or adopted by Union officials, N. L. R. B. v. Dallas General Drivers, Warehousemen & Helpers, Local No. 745, 264 F.2d 642, 648 (5th Cir.) cert. denied, 361 U.S. 814, 80 S.Ct. 54, 4 L.Ed.2d 61 (1959), such conduct will nevertheless warrant setting aside the election if it disrupted the voting procedure or destroyed the atmosphere necessary to the exercise of a free choice in the representation election. Hometown Foods, Inc. v. N. L. R. B., 379 F.2d 241 (5th Cir. 1967). Again we emphasize that the Company failed to make the necessary proof here.

an opportunity to observe and examine witnesses, an evidentiary hearing will be ordered. United States Rubber Company v. N.L.R.B., 373 F.2d 602, 606 (5th Cir.1967); N.L.R.B. v. O.K. Van Storage, Inc, *supra* 297 F.2d at 76. To meet this burden, there must be "specific evidence of specific events from or about specific people" in support of allegations having a basis in law sufficient to overturn the election. N.L.R.B. v. Douglas County Electric Membership Corp., 358 F.2d 125, 130 (5th Cir.1966); *accord*, N.L.R.B. v. O.K. Van Storage, Inc., 297 F.2d at 76.

■ Despite the several aforementioned opportunities for the Company to fulfill this burden, the Company failed to convince either the Regional Director or the Board that its objections raised substantial and material factual issues warranting an evidentiary hearing. Essentially, it was found that, even if the alleged misconduct occurred, neither the Company's proffer of evidence nor the administrative investigation revealed any adverse effect upon the atmosphere necessary to the employees' exercise of a free choice in the election. Inasmuch as the Company's allegations therefore had no basis in law sufficient to set aside the election, resolution of the factual disputes raised by the Company was unnecessary, and an evidentiary hearing was accordingly denied.

In reviewing the Board's determination that the Company failed to meet its burden of proof of showing the existence of substantial and material factual issues warranting an evidentiary hearing, we are again mindful of the wide degree of discretion entrusted to the Board in representation matters, as well as our duty to determine only whether the Board's conclusion is reasonably drawn from the evidence submitted and the circumstances surrounding the election. Universal Camera Corporation v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Our role thus circumscribed, we are constrained to hold that the Board has not acted arbitrarily or capriciously or abused its discretion by denying the Company an evidentiary hearing on its objections.

■ It is well established that a hearing is not required in every case to determine the validity of objections to a Board-conducted election, N.L.R.B. v. Smith Industries, Inc., 403 F.2d 889, 894 (5th Cir.1968), and especially not "where if all the facts contended for by the objecting party 'were credited no ground is shown which would warrant setting aside the election.'" N.L.R.B. v. Bata Shoe Company, 377 F.2d 821, 826 (4th Cir.1967), quoted approvingly in N.L.R.B. v. Smith Industries, Inc., *supra* 403 F.2d at 892; *accord*, N.L.R.B. v. Capitan Drilling Company, 408 F.2d 676 (5th Cir.1969); N.L.R.B. v. Douglas County Electric Membership Corp., *supra*, 358 F.2d at 131; *cf.* Neuhoff Brothers Packers, Inc. v. N.L.R.B., 362 F.2d 611, 615 (5th Cir.1966); Anchor Manufacturing Company v. N.L.R.B., 300 F.2d 301, 304 (5th Cir.1962). The Board, having made such a finding in the light of the insubstantial allegations submitted by the Company, cannot therefore be said to have acted outside its discretion when it refused to grant an evidentiary hearing. And this is so notwithstanding the fact that the Board's ultimate conclusion rests upon the "elusive concept of the subjective effect of objective union conduct on 'the minds of voters'". N.L.R.B. v. Smith Industries, Inc., *supra*, 403 F.2d at 895. An opportunity to observe and examine witnesses, while helpful in determining the effect of union conduct on the voters' exercise of free choice, is nevertheless not ipso facto required; the need for a hearing in such cases is still left to the Board to determine in its discretion. *See* Southwestern Portland Cement Company v. N.L.R.B., 407 F.2d 131 (5th Cir.1969); Anchor Manufacturing Company v. N.L.R.B., *supra*. We conclude that this discretion was properly exercised.[6]

---

6. In an abundance of caution, we note that our decision is in no wise inconsistent with the outflux of recent cases decided by this Court where the Board's

■ The Company's final specification of error is the Board's refusal to make available either for inclusion in the record on appeal or for examination by the Company the seven employee affidavits taken by the Board's investigator.[7] Though a question of first impression in this Circuit, the authorities leave no doubt that these affidavits are confidential and privileged against disclosure unless a hearing is required and the affiant is called to testify.[8] As was stated by the Seventh Circuit Court of Appeals in N.L.R.B. v. National Survey Service, Inc., 361 F.2d 199, 206 (1966):

> Statements made during an investigation by employees to Board agents may and often do reveal an employee's and his co-workers' attitudes and activities in relation to a union and

their employer. If an employee knows that statements made by him will be revealed to an employer, he is less likely, for fear of reprisal, to make an uninhibited and non-evasive statement, a circumstance complicating a determination of the actual facts in a labor dispute. *Cf.* N.L.R.B. v. Winn-Dixie Stores, Inc., 6 Cir., 341 F.2d 750 (1965); Suprenant Manufacturing Company v. N.L.R.B., 6 Cir., 341 F.2d 756 (1965); Texas Industries, Inc., v. N.L.R.B., 5 Cir., 336 F.2d 128 (1964); Winn-Dixie Stores, Inc., 143 N.L.R.B. 848 (1963).

There is, therefore, strong reason to maintain the confidentiality of employee statements and good reason for the Board's policy of not disclosing such statements to employers.

order to bargain has been denied enforcement because of the failure to provide the *objecting party a hearing on its objections*. *See* Electra Manufacturing Co. v. N. L. R. B., 408 F.2d 570 (5th Cir. 1969) (*misrepresentation of material facts at a time when the Company was prevented from making an effective rebuttal*); Tyler Pipe and Foundry Company v. N. L. R. B., 406 F.2d 1272 (5th Cir. 1969) (*semble*); N. L. R. B. v. Monroe Auto Equipment Company, Hartwell Division, 406 F.2d 177 (5th Cir. 1969) (*biased and improper conduct of* N. L. R. B. *agents*); N. L. R. B. v. Genesco, Inc., 406 F.2d 393 (5th Cir. 1969) (*misrepresentation of material facts at a time when the Company was prevented from making an effective rebuttal*); N. L. R. B. v. Smith Industries, Inc., 403 F.2d 889 (5th Cir. 1968) (*substantial disputed facts*); Howell Refining Company v. N. L. R. B., 400 F.2d 213 (5th Cir. 1968) (*semble*); N. L. R. B. v. Ortronix, Inc., 380 F.2d 737 (5th Cir. 1967) (*semble*); Hometown Foods, Inc. v. N.· L. R. B., 379 F.2d 241 (5th Cir. 1967) (*new evidence brought out for the first time in the unfair labor practice proceeding*); United States Rubber Company v. N. L. R. B., 373 F.2d 602 (5th Cir. 1967) (*misrepresentation of material facts at a time when the Company was prevented from making an effective rebuttal*). *But see* N. L. R. B. v. Capitan Drilling Company, 408 F.2d 676 (5th Cir. 1969); Southwestern Portland Cement Company v. N. L. R. B., 407 F.2d 131

(5th Cir. 1969), pet. cert. filed, 37 U.S. L.W. 3444 (May 14, 1969); Pepperell Manufacturing Company v. N. L. R. B., 403 F.2d 520 (5th Cir. 1968), cert. denied 395 U.S. 922, 89 S.Ct. 1774, 23 L. Ed.2d 238 (May 26, 1969). We find the cases ordering a hearing to involve objections whose very nature and possible impact upon the employees' free choice are of an entirely different order than those presented in this case, where the Company has not only come forth with poorly supported and insubstantial objections, but has also failed even to suggest, much less to prove, that a material number of employees were influenced by the objectionable conduct.

7. Because one employee voluntarily gave his affidavit to the Company, only the remaining six affidavits are actually in issue.

8. Section 102.18(b) (1) of the Board's Rules and Regulations, 29 C.F.R. § 102.-18(b) (1) (1969), provides that:
   > After a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint under section 10(c) of the act, the trial examiner shall, upon motion of the respondent, order the production of any statement * * * of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified. * * *

*Accord,* Intertype Company v. N.L.R.B., 401 F.2d 41, 45 (4th Cir.1968), cert. denied, 393 U.S. 1049, 89 S.Ct. 686, 21 L. Ed.2d 691 (Jan. 20, 1969). We therefore find no error in the Board's refusal to produce the employee affidavits.

The Board's order will be

Enforced.