**Wm. H. D. FONES, Trustee, d/b/a Southern Industrial Laundry, Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

No. 29442

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1970.

Rehearing Denied and Rehearing En Banc Denied Nov. 10, 1970.

---

\* ▪ Rule 18, 5th Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir., 1970, 431 F. 2d 409, Part I.

**418**

W. Kerby Bowling, Paul O. Miller, III, Bowling, Miller & Jackson, Memphis, Tenn., for petitioner.

Walter C. Phillips, 10th Region, N. L. R. B., Atlanta, Ga., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Herman M. Levy, Jesse I. Etelson, Attys., N. L. R. B., for respondent.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The National Labor Relations Board found that the Petitioner, d/b/a Southern Industrial Laundry (Company) had violated Sections 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S.C. A. § 158(a), by refusing to bargain with Local 218, Laundry, Dry Cleaning & Dye House Workers Union, the certified exclusive representative of its employees. In issuing its ruling the Board rejected the Company's contentions that it was not obligated to bargain with the Union because (1) the Union had not been properly certified, and (2) the Board improperly denied the Company a hearing on both the complaint proceeding and the prior representation proceeding. The principal issue on this petition for review and cross-application for enforcement is whether the findings of the Board are supported by substantial evidence on the record as a whole. We find that they are and enforce the order.

In October, 1968, the Union prevailed in a consent election held by the Board at the Company's plant. The Company filed a series of timely objections as a basis for setting aside the election:

(1) persons acting in behalf of the Union threatened employees that they would "cause them trouble", "cause them trouble with their families", and "cause them to lose their jobs", and made similar threats to be carried out if these employees did not vote for the Union;

(2) Union agents, representatives, and supporters in furtherance of the Union's cause, threatened employees to the effect that they would lose their jobs, that "the union would make it rough on them and see that they lose their job if they didn't vote for the Union," and "the union would make trouble between them and their spouses", unless they voted for the Union; and

(3) persons acting in behalf of the Union threatened employees with loss of jobs and physical violence if they did not vote for the Union, and coerced employees by stating that they would "make it tough on them" and cause them "to lose their jobs" if they did not vote for the Union.

In support of objection (1), the Company presented three witnesses. The first witness, a female employee, stated that a fellow employee told her she was going to "spill the beans" about the witness's "running around" with several men in the plant, if the witness did not vote for the Union. The second stated that some unnamed "fellow employees in favor of the Union" threatened to tell his wife about an alleged affair with another employee unless the witness persuaded his wife to vote for the Union. The third witness stated that she overheard an unknown person say that because she was not supporting the Union, her alleged "affair" with a supervisor would be publicized. All three incidents were alleged to have occurred within three days prior to the election.

In support of objection (2), one witness presented by the Company stated that while he was wearing a "Vote No" sign in the plant, a fellow employee told him, "If the Union comes in, we are going to see that you lose your job." Another Company witness stated that the same employee told the witness, who was also wearing a "Vote No" sign, "If the Union comes in, you will be the first to lose your job over the election."

In support of objection (3), the Company presented two witnesses. One stated that about two weeks before the election a fellow employee told him "I know a fellow bigger than [the Plant Manager] and he can hurt you." Although he voted on election day, the witness said he was afraid to vote because "people were giving me a funny eye." The second witness stated that when he went to the plant washroom wearing a "Vote No" sign, a washroom employee said, "Ain't nobody going to work back here with one of them signs on. You have to go somewhere else * * *. Don't ever come back around here with one of them signs on."[1]

Following an investigation pursuant to the Board's rules and regulations, the Regional Director overruled the Company's objections based upon the evidence that was before him. Although the Company alleged that the Union was responsible for the statements reported by all the witnesses, the Director found from the evidence presented to him that the sources of the statements were in all cases, either rank-and-file employees or persons whose identities were not disclosed. He concluded that:

> even assuming the foregoing threats were made as alleged, such threats emanating from rank-and-file employees, without any official status in the Union, were neither attributable to the Union nor so aggravated in character as to create a general atmosphere of fear precluding a free expression of choice.

The Company filed exceptions to the Regional Director's report to obtain review by the Board. The Board, finding that the exceptions "raised no material or substantial issues of fact or law which would warrant reversal or require a hearing," affirmed the Regional Director and certified the Union.

Following its certification by the Board, the Union requested the Company to commence bargaining. When the Company refused, a Complaint was issued alleging that the Company was violating Section 8(a) (5) and (1) of the Act. In its Answer to the Complaint the Company admitted its refusal to bargain and challenged the validity of the Union's certification on the same grounds it had previously raised in the representation proceeding.

Upon motion of the General Counsel for summary judgment, the Trial Examiner, noting the absence of newly discovered evidence or extraordinary circumstances, concluded that he was bound by the findings of the Board in the representation proceed-

---

1. Other Company objections were overruled as unmeritorious by the Regional Director for lack of evidence; the Company did not except to these rulings; and these objections are not before the Court in the instant appeal.

ing and that no litigable issue was before him. Accordingly, he granted the motion for summary judgment and entered his findings and conclusions. The Board, adopting the Examiner's decision, found that the Company had violated Section 8(a) (5) and (1) of the Act by refusing to bargain with the duly certified representative of its employees. The Board therefore issued an order requiring the Company to cease and desist from the unfair labor practice and from otherwise interfering with the efforts of the Union to negotiate for and represent its employees. The order further required the Company to bargain collectively upon request, to post appropriate notices and provided that the initial year of certification would run from the date the Company commenced to bargain in good faith. From this order the Company has petitioned this Court for review, and the Board has cross-petitioned to have its order enforced.

■ With respect to the Company's contention that it was denied a hearing at the representation proceeding, it is now a well-settled principle that the Board need not hold hearings on objections arising out of an election unless it appears that the objections raised present "substantial and material factual issues." 29 C.F.R. 102.69(c) (e). "This qualified right to a hearing is designed to resolve questions expeditiously preliminary to the establishment of the bargaining relationship. * * *" N. L. R. B. v. Golden Age Beverage Co., 415 F.2d 26, 32 (5th Cir. 1969). The burden is on the party who seeks to overturn the result of an election, not upon the Board, to show with *specific evidence* that the election was not fairly conducted. N. L. R. B. v. Mattison Machine Works, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961). That evidence must show "not only that the unlawful acts occurred, but also that they interfered with the employee's exercise of free choice to such an extent that they materially affected the results of the election." Golden Age, *supra* 415 F.2d

at 30. To meet this burden the complaining party must supply prima facie evidence, presenting substantial and material factual issues which would warrant setting aside the election. N. L. R. B. v. Smith Industries, Inc., 403 F.2d 889 (5th Cir. 1968). Upon examination of the record we find that the Company did not meet its burden. A hearing is more than a mere formalistic gesture; if there is nothing to hear, a "hearing" is senseless and useless. N. L. R. B. v. Air Control Products of St. Petersburg, Inc., 335 F.2d 245, 249 (5th Cir. 1964).

■ The Company also contends that a hearing should have been held in the unfair labor practice proceeding. Yet here the Company presented no new evidence or issues which it had not presented before in the representation proceeding. Therefore, this was an instance where the representation and unfair labor practice proceedings are really one. Obviously, if a hearing is not required in a representation proceeding it certainly cannot be required in the unfair labor practice proceeding where the issues are the same. N. L. R. B. v. Decatur Transfer & Storage, Inc., 430 F.2d 763 (5th Cir. 1970).

Examining the record in the light of these established principles we find that there was substantial evidence to support the Board's conclusions that the Company did not meet its burden to be entitled to a hearing and consequently that there was no basis for setting aside the election. The Order of the Board is therefore enforced.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.