## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## CLAXTON POULTRY CO., INC., Respondent.

No. 77–1267.

United States Court of Appeals, Fifth Circuit.

Oct. 10, 1978.

---

Elliott Moore, Deputy Associate Gen. Counsel, Marion L. Griffin, Supervisor, Joseph P. Norelli, Atty., John E. Higgins, Jr., Deputy Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel, John S. Irving, Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

James W. Wimberly, Jr., Atlanta, Ga., for respondent.

Before JONES, GODBOLD and GEE, Circuit Judges.

PER CURIAM:

The Board found that the company refused to bargain with the certified representative after a Board-conducted election. It ordered the company to bargain, the company refused and the Board applied for enforcement. The company admits the refus-

al to bargain and contests the validity of the election.

The representation petition was filed December 17, 1974, and the election held February 21, 1975, with 136 votes for the union, 95 against, and 17 challenged ballots. The company filed five post-election objections. After investigation and without hearing the Regional Director recommended that all objections be denied. The company filed no exceptions to the recommendation regarding Objection 3, and it dropped out of the case. The Board adopted the Regional Director's recommendations that Objections 2 and 4 be overruled and remanded for a hearing on Objections 1 and 5 on the ground that they raised factual issues requiring a hearing. A Hearing Officer conducted a hearing and recommended that 1 and 5 be denied. The Board adopted his recommendation and certified the union.

## I. The objections.

■ We consider the Board's rulings on Objections 1, 2, 4 and 5, recognizing that the burden was upon the objecting employer to prove that there had been prejudicial unfairness in the election, a heavy burden which can only be discharged by showing that unlawful acts occurred that interfered with the employees' exercise of free choice to the extent that they materially affected the results of the election. *NLRB v. Golden Age Beverage Co.,* 415 F.2d 26 (CA5, 1969). The primary determination is for the Board, subject to our review under substantial evidence standards. *Id.*

■ *Objection 1*—threats of economic reprisal by union agents directed to voters if they did not *support* the union (denied after hearing). The Board's policy is not to consider evidence of pre-election misconduct that is unduly remote from the date of the election, and in implementing this policy it follows a rule of thumb that it will not consider evidence of misconduct occurring prior to the filing of the representation petition, *Ideal Electric,* 134 N.L.R.B. 1275 (1961). The Board refused to consider testimony concerning statements made by union agents in November 1974 and at a union meeting held December 14, 1974. We have recognized the purpose of the *Ideal Electric* rule and have approved its application, *Golden Age, supra; Independent Inc. v. NLRB,* 406 F.2d 203 (CA5, 1969). The Board has consistently declined to depart from the *Ideal Electric* standard except in very unusual circumstances.[1] We are not able to say that the Board erred in applying *Ideal Electric* here.

■ A statement allegedly was made at a February 15 meeting to the general effect that if the union did not win some employees might lose their jobs. The Hearing Officer made a routine credibility choice, which a court should not disturb, that the statement was not made.

A witness testified that at a meeting on January 4 a union agent said that employees who signed could make life miserable for those who worked beside them and didn't sign. Another described an agent as saying at the meeting that the signers could make it miserable for the non-signers. These statements, if made, do not appear to us to be threats of economic reprisals. But if they were economic threats they are embraced in the credited denial by witness Lee that neither he nor any other union representative threatened the employees with economic reprisals, that is, the Board by accepting Lee's denial concluded the statements were not made at all.

There was no abuse of discretion in denying Objection 1.

*Objection 2*—threats of economic reprisals by union agents or by employees against eligible voters if they did not *vote for* the union (denied without hearing). The Re-

---

1. *E. g., Willis Shaw Frozen Food Express, Inc.,* 209 N.L.R.B. 267 (1974) (pre-petition conduct consisting of numerous incidents of stabbings, bodily assaults, and shootings during an "often violent and emotion-filled strike" which created a "general atmosphere of confusion, acts of violence, and threats of violence, such as might be expected to generate anxiety and fear of reprisal, and to render impossible a rational, uncoerced choice of bargaining representative").

gional Director, in his report of investigation, lumped together Objections 1 and 2 because both alleged economic threats. Objection 1, alleging economic threats directed at eligible voters who did not *support* the union, was supported by affidavits embracing a number of incidents in-plant and at union meetings elsewhere, extending over December, January and February. Objection 2 alleged economic threats directed at eligible voters who did not *vote* for the union, and the supporting evidence related to a single incident; one person stated that she attended a union meeting in the Masonic Hall between the second and third weeks of December 1974, at which a union organizer conducting the meeting stated that employees who voted against the union and did not join would lose their jobs if the union got in. Two other persons presented by the employer were at the meeting but did not hear the alleged remark.[2] With respect to all threats of economic reprisals embraced within Objections 1 and 2, and allegedly made in union meetings, which included the single threat said to be directed at those who *voted* against the union, the Regional Director concluded that assuming arguendo the threats were made they were neutralized by the employer's statements; specifically the employer's campaign materials were couched in language unmistakably conveying to the employees that the union had no power to affect job tenure.

The employer does not claim that there were any threats directed at persons *voting* against the union other than the one just described but rather that a hearing was required on Objection 2 because the objection raised substantial and material factual issues which could be resolved only by a hearing. The Regional Director, however, pretermitted the "one heard it, two didn't" evidence, as he was entitled to do and as-

sumed arguendo that the statement was made and addressed its potential impact on the election. If all the facts contended for by the objecting party are credited and no ground is shown which would warrant setting aside the election, a hearing is not required to determine the validity of the election. *NLRB v. Golden Age*, 415 F.2d at 33; *NLRB v. Smith Industries, Inc.*, 403 F.2d 889, 894 (CA5, 1968); *NLRB v. Capitan Drilling Company*, 408 F.2d 676 (CA5, 1969); *NLRB v. Douglas County Electric Membership Corp.*, 358 F.2d 125 (CA5, 1966). The substantiality or insubstantiality of likelihood that the voters' exercise of free choice has been affected is for the Board to decide, subject to review for abuse of discretion. *Golden Age, supra.* Certainly there was no abuse by the Board here where the subject matter was a single remark made more than two months before the election and before the representation petition was filed, and the employer's statements tended to neutralize it.

*Objection 4*—misrepresentations by union agents departing substantially from the truth, to which the company had no time to reply (denied without hearing). The company proffered evidence that at a meeting the union agent told employees that the minimum wage was $2.20 an hour when in fact it was $2.10, and that Georgia, where the plant is located, had no "right to work" law. There was testimony that at the same meeting another union agent corrected the first misstatement and told the employees the minimum wage was $2.10 per hour. The existence of a right to work law is a matter of general knowledge, and the company's literature contained two specific references to the fact that under the law an employee was not required to join a union. Denial of this objection was not an abuse of the Board's discretion.[3]

2. In considering this point the Regional Director presumably overlooked that the only meeting in the Masonic Hall near mid-December was the December 14 meeting. Thus, based upon *Ideal Electric*, he could have refused to consider Objection 2, as he did Objection 1 matters springing from the same meeting.

3. We reach this conclusion under the standards of *Hollywood Ceramics Co.*, 140 N.L.R.B. 221 (1962), accepted by this court in *NLRB v. Muscogee Lumber Co., Inc.*, 473 F.2d 1364 (CA5, 1973), and *Pepperell Mfg. Co. v. NLRB*, 403 F.2d 520 (CA5, 1968), *cert. denied*, 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 238 (1969).

*Objection 5*—union promises of benefits contingent on employees' support for the union. The company claimed that the union told employees that the company was paying less than the minimum wage and that if the union won it would secure back-pay for them. The only evidence of such a promise concerned a statement made in November 1974 before the representation petition was filed. See discussion of Objection 1, above.

## II. The need for hearing.

 The Board did not abuse its discretion in not requiring a hearing on Objections 2 and 4. The Board need not require a hearing unless there are substantial and material issues of fact. 29 C.F.R. § 102.-69(c). The objecting party must supply evidence which prima facie would warrant setting aside the election. *NLRB v. Martin Building Material Co.*, 431 F.2d 1246 (CA5, 1970); *Frito-Lay, Inc. v. NLRB*, 422 F.2d 169 (CA5, 1970). Here, as discussed above, there was at least arguable conflict in the evidentiary matter on Objections 2 and 4, but the Regional Director assumed *arguendo* that the statements alleged by the company to have been made actually had been made, and he held them insufficient as a matter of law to warrant setting aside the election. The Board adopted his recommendation. This is an acceptable procedure, *Golden Age, supra,* and we do not disagree with the Board's conclusion.

## III. The granting of summary judgment.

 The Board committed no error in granting summary judgment in the unfair practice proceeding. The company is not entitled to relitigate in an unfair labor practice case matters disposed of in the representation case. *Golden Age, supra.*

Summary judgment was not rendered inappropriate by the claim that the company had been deprived of the right to develop objections to the election because it was denied access to the affidavit of Irene May-

ner. In the hearing on Objections 1 and 5 the company claimed she was an adverse witness and demanded the affidavit for impeachment purposes, but the Hearing Officer held that she was not adverse and the Board adopted his ruling. We cannot say that the Board was wrong.

 The company's claim that summary judgment was improper because it wanted to litigate the appropriateness of the bargaining unit is frivolous. This is contrary to the stipulation pursuant to which the election was held, and no reason is shown for departing from the stipulation.

 There is no merit to the assertion that summary judgment was inappropriate because the General Counsel was required to prove the union's current majority status. The rule against questioning majority status for one year following certification applies.

ENFORCED.

---

Thus we do not need to consider the even higher threshold for setting aside an election,

appearing in *Shopping Kart Food Market, Inc.,* 228 NLRB No. 190 (1977).