TRW–UNITED GREENFIELD
DIVISION, Petitioner,
Cross-Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross-Petitioner,

International Union, United Automobile,
Aerospace & Agriculture Implement
Workers of America, Intervenor.

No. 82–8659.

United States Court of Appeals,
Eleventh Circuit.

Oct. 11, 1983.

Robert L. Thompson, David M. Vaughan, Atlanta, Ga., for petitioner, cross-respondent.

Morgan Stanford, Richard A. Cohen, James D. Fagan, Jr., Atlanta, Ga., for Intern. Union, UAW.

Elliott Moore, Assoc. Gen. Counsel, NLRB, Appellate Court Branch, Washington, D.C., for respondent, cross-petitioner.

Before JOHNSON and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

TRW-United Greenfield Division petitions this court to review and set aside an adverse order of the National Labor Relations Board. The Board cross-petitions for enforcement of the order.

TRW is an Ohio based corporation with a plant in Evans, Georgia, which manufactures high speed cutting tools. In 1977 the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), began organizational activities among the company's employees. On December 16, 1977, an election was held in which the employees voted 354 to 198 against union representation. The union filed election objections and also filed charges that TRW (the company) had engaged in unfair labor practices.

After a hearing on the consolidated charges, an administrative law judge found that the company had violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1976) and set aside the results of the election. The Board affirmed the decision of the ALJ and directed that a second election be held. The Fifth Circuit affirmed. *TRW-United Greenfield Division v. N.L.R.B.,* 637 F.2d 410 (5th Cir. 1981).

A second election was held on November 15, 1979, resulting in a tie, 209 to 209, with three challenged ballots. The company filed objections to the election alleging that the union had made material misrepresentations concerning employee benefits at other TRW plants and that the union had created an atmosphere of fear and coercion among the employees during the pre-election period. The company also challenged the status of three second shift dispatchers stating they were supervisors or managerial employees and thus ineligible to vote.

On December 28, 1979 the Board's Acting Regional Director issued a report recommending that the election objections be overruled and the challenged ballots be opened and counted. The company filed exceptions to the report. On April 14, 1980 the Board issued an order adopting the recommendations with respect to the election objections, but found the company had raised substantial and material factual issues as to the challenges and remanded the case for a hearing. The company filed a motion for reconsideration which was granted and the Board directed that the hearing include the company's election objections.

A hearing was held before an administrative law judge in July and August 1980. On June 3, 1981 the ALJ issued an opinion overruling the objections of the company and finding that the second shift dispatchers did not exercise sufficient supervisory

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

authority to qualify as supervisors within the meaning of the Act. The three challenged ballots were ordered opened and an appropriate certification issued based on the revised tally. These findings with minor modifications were adopted by the Board. The revised tally showed 212 votes for and 209 votes against representation by the union. On February 25, 1982 the Board certified the union as the exclusive bargaining representative of the company's production and maintenance employees.

On May 28, 1982, based on a charge filed by the union, the Board's General Counsel issued a complaint alleging that the company had engaged in and was engaging in unfair labor practices within the meaning of Section 8(a)(5) and (1) of the Act, 29 U.S.C. 158(a)(5) and (1), by refusing to recognize and bargain with the union upon request since March 24, 1982. After an answer was filed, the General Counsel filed a motion for summary judgment. On September 17, 1982, the Board granted the motion for the union, finding the company was not entitled to relitigate issues which had been fully litigated and finally determined in the representation proceeding, absent newly discovered or previously unavailable information. The Board ordered the company to cease and desist from its refusal to bargain with the union. It is from this order that the company appeals to this court for review. The company raises the following issues: (1) whether the Board erred in failing to set aside the election results where the union and its supporters in close proximity to the election made material misrepresentations regarding benefits at other TRW plants; (2) whether the petitioner was denied a full and fair hearing by the administrative law judge's refusal to allow petitioner to call additional witnesses; (3) whether the Board erred in failing to set aside the election results where threats of violence by union representatives created an atmosphere of fear and coercion; and (4) whether there was substantial evidence to support a finding that the second shift dispatchers were not supervisors within the meaning of the National Labor Relations Act.

The Board has broad discretion in conducting and supervising elections. *N.L.R.B. v. A.J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *Daylight Grocery Co., Inc. v. N.L.R.B.*, 678 F.2d 905, 909 (11th Cir.1982); *N.L.R.B. v. Osborn Transportation, Inc.*, 589 F.2d 1275, 1279 (5th Cir.1979). Determination of whether a union representation election was unfairly conducted and should be set aside is primarily a question for the National Labor Relations Board. The burden is on the objecting party to prove, by specific evidence, not only that unlawful acts occurred but also that those acts interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. *N.L.R.B. v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir.1969). Thus, the only question for this court is whether the Board reasonably exercised its discretion in overruling the company's election objections and ballot challenges. *Pepperell Manufacturing Company v. N.L.R.B.*, 403 F.2d 520, 522 (5th Cir.1968) cert. denied 395 U.S. 922, 89 S.Ct. 1774, 23 L.Ed.2d 238; *Neuhoff Bros. Packers, Inc. v. N.L.R.B.*, 362 F.2d 611, 614 (5th Cir.1966) cert. denied 386 U.S. 956, 87 S.Ct. 1027, 18 L.Ed.2d 106. The Board's determination will be sustained if it is supported by substantial evidence on the record as a whole. 29 U.S.C. § 160(e); *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951).

At a meeting of approximately 60 employees shortly before the November election, union business agent Louis Echols was asked about contract benefits at the company's Putnam plant. Specifically the employees wanted to know about dental and drug plans. The company contends that Echols told the group that the plant had a dental plan, when in fact it did not. They further argue that they did not learn of this misrepresentation until late in the afternoon of the day before the election, which was too late for them to reply and for this reason the election should be set aside. The ALJ found the testimony of Echols, that he had never said the Putnam plant had a

dental plan, more credible than that of an employee who testified he had heard such a statement. The court finds no reason to overrule the credibility choice of the ALJ.

■ At the hearing the ALJ refused to allow five additional employees to testify that other employees told them that such a statement had been made. TRW contends it was denied a full and fair hearing by the exclusion of this testimony. The general rule is that administrative tribunals are not bound by the strict rules of evidence governing jury trials. *Opp Cotton Mills, Inc. v. Administrator of Wage & Hour Div.,* 312 U.S. 126, 155, 61 S.Ct. 524, 537, 85 L.Ed. 624 (1971). Thus, the admission of testimony which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. *Tagg Bros. & Moorhead & United States,* 280 U.S. 420, 442, 50 S.Ct. 220, 225, 74 L.Ed. 524 (1930). But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence. *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 230, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Therefore, the hearsay testimony of other employees would not have amounted to substantial evidence sufficient to support a finding for the company. We find that TRW was not denied a full and fair hearing by the judge's refusal to admit hearsay testimony.

■ The company asks that the election be set aside because of the air of fear and coercion which existed due to the threatening remarks of the union representative, Louis Echols. In early November 1979, at a meeting of about 100 employees, Echols was asked if a person would be able to go to work if the union won and a strike was called. He responded that he did not think it would be advisable. The ALJ construed this as a truthful response rather than as a threat. No other statements or acts were cited by TRW as contributing to a threatening atmosphere.

The company has made no showing that the statement of Echols created an environment of tension or coercion which precluded employees from exercising a free choice. *N.L.R.B. v. Golden Age Beverage Co.,* 415 F.2d 26, 32 (5th Cir.1969). "For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls." *N.L.R.B. v. Zelrich Company,* 344 F.2d 1011, 1015 (5th Cir. 1965). The evidence here falls far short of requiring a reversal of the Board's decision.

■ The company challenges the Board's determination that three second shift dispatchers were not supervisory employees within the meaning of the Act at the time of the election. Section 2(11) of the National Labor Relations Act, 29 U.S.C. § 152(11), defines "supervisor" in the following manner:

(11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

The company employed six dispatchers on the first shift and three on the second. The supervisor of the second shift dispatchers left the plant every day around 6:00 p.m., but was available by phone should problems arise after that time. The primary responsibility of the dispatchers was to expedite the flow of tools through the production process following a computer printout "travel card" made by the Industrial Engineering Department. Each dispatcher was responsible for a certain number of opera-

tions in the total sequence. As the work was moved from operation to operation, it was placed in receiving racks. The company asserts the second shift dispatchers were assigning work when they placed work in a particular rack. The dispatchers allegedly also had the authority to recommend disciplinary action, overtime and production control procedures.

The record demonstrates that the dispatchers did little more than recommend action but had no authority to follow through. In extraordinary situations, the dispatchers had the authority to request a machine operator to work on a priority order, but if the operator refused the dispatcher had no authority to demand the work be done. It has been noted that nearly everyone at one time or another, under some condition, tells someone else what to do, but that one who engages in an isolated incident of supervision is not necessarily a supervisor under the Act. *N.L.R.B. v. Security Guard Service, Inc.,* 384 F.2d 143, 149 (5th Cir.1967).

The decision of the Board on supervisory status is conclusive if it is supported by substantial evidence on the record as a whole. *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *Sweeney & Co. v. N.L.R.B.,* 437 F.2d 1127 (5th Cir.1971). An interpretation of § 152(11) of the Act calls upon the Board's "special function of applying the general provisions of the Act to the complexities of industrial life." *N.L.R.B. v. Erie Resister Corp.,* 373 U.S. 221, 236, 83 S.Ct. 1139, 1150, 10 L.Ed.2d 308 (1963); *N.L.R.B. v. Security Guard Service, Inc.,* 384 F.2d 143, 146 (5th Cir.1967); *Trailmobile Division, Pullman Incorporated v. N.L.R.B.,* 379 F.2d 419, 422 (5th Cir.1967).

The court has carefully reviewed the entire record and finds there is substantial evidence to support the Board's findings that the responsibilities of the dispatchers incident to their normal non-supervisory work did not amount to supervisory direction of the type described by the statute.

For the above stated reasons, the Board's order will be

ENFORCED.