NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DELCHAMPS, INC., Respondent.

No. 79–4067.

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1981.

Rehearing and Rehearing En Banc Denied Oct. 7, 1981.

---

Elliott Moore, Deputy Assoc. Gen. Counsel, Peter M. Bernstein, Ralph C. Simpson,

Attys., N.L.R.B., Washington, D.C., for petitioner.

Kullman, Lang, Inman & Bee, William F. Banta, New Orleans, La., for respondent.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE,* District Judge.

LYNNE, District Judge:

Pursuant to the provisions of 29 U.S.C. § 160(e), the National Labor Relations Board (the Board) has petitioned this Court for enforcement of its order reported at 244 NLRB No. 51 (August 20, 1979), directed against respondent, Delchamps, Inc.

Vigorously resisting the enforcement of such order, respondent insists that the Board's findings of fact which undergird its legal conclusion that Delchamps violated 29 U.S.C. § 158(a)(1) are unsupported by substantial evidence in the record.

■ It bears repeating that our duty to canvass "the whole record" in assessing the substantiality of the evidence supporting the Board's order is demanding indeed. As explicated in *Universal Camera Corp. v. Labor Board,* 340 U.S. 474, 487–8, 71 S.Ct. 456, 463–4, 95 L.Ed. 456 (1951):

> Whether or not it was ever permissible for courts to determine the substantiality of evidence supporting a Labor Board decision merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight.

> To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*

■ Agreeing with the findings and conclusions of the Administrative Law Judge (ALJ), the Board concluded that Delchamps violated Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) by engaging in the following subtle practices, *inter alia,* to discourage unionization of its work force:

(1) Delchamps threatened employees with loss of employment in the event of unionization, and threatened not to sign a contract if its employees joined the union;

(2) It coercively interrogated employees concerning union activities and sympathies, and restricted employee movement within its stores because of union activity, and

(3) It created among its employees the impression of surveillance of union activities.

Having canvassed the whole record, we find that there is substantial evidence, albeit forcefully contested, from which the Board could have found the foregoing violations.

■ Respondent contends that the finding of coercion was infected by error committed by the ALJ in excluding proffered evidence regarding the friendly relationship between its assistant manager, Rejczyk, and some of its employees. We disagree. The existence of friendship between a manager and an employee is only

* District Judge of the Northern District of Alabama, sitting by designation.

one factor to be considered in determining whether the manager's questions are coercive. Both Board and the Courts must weigh the totality of circumstances surrounding the interrogation. *Federal-Mogul v. NLRB*, 566 F.2d 1245, 1249 (5th Cir.1978). Moreover, Ms. Rejczyk did not question employees in a friendly and informal manner. She sought out particular employees to question and recorded their responses in writing.

■ Additionally, respondent insists that the ALJ erred in excluding documents relating to the alleged unfair labor practices of the union. This contention is without merit. The document concerned involved unfair labor practice charges against the union which were dismissed by the General Counsel. *Federal-Mogul, supra.*

More troublesome is the Board's conclusion, in rejecting the contrary determination of the ALJ, that the pre-election luncheon and dinner meetings conducted by respondent violated Section 8(a)(1). Substantial evidence in the record supports the Board's finding that, except for the June 15 meeting on the day preceding the election, respondent permitted employees of its several stores who were not on duty to clock in and receive pay for attendance upon these meetings at which free meals were served. While some union supporters attended these meetings, the more active and vocal of their number were excluded.

■ While an employer may exclude union supporters from meetings held during work hours at which it expresses its opposition to unionization, *Mueller Brass Co.*, 220 NLRB 1127 (1975), enforcement denied, 544 F.2d 815 (5th Cir.1977), and its conduct in providing free meals to employees during non-working hours at campaign meetings does not, *per se*, constitute interference with an election, *Northern States Beef, Inc.*, 226 NLRB 365 (1976), *Ohmite Manufacturing Company*, 111 NLRB 888 (1955), we are constrained to agree with the Board that the combination of these two tactics, to which is added the payment of wages to some, but not all, of its employees for attendance at meetings during their scheduled off-hours constitutes a violation of the Act.

■ Turning to the remedy proposed by the ALJ and adopted by the Board, we are reminded that the Board has broad discretion in fashioning appropriate remedial measures and its decision must be given "special respect", *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 609, 612 n.32, 89 S.Ct. 1918, 1937, 1939, n.32, 23 L.Ed.2d 547 (1969), and "considerable weight", *Virginia Electric & Power Co. v. N.L.R.B.*, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1943). Its order should not be altered by the court unless it is a "patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *Id.*

■ We readily agree that the cease and desist order was clearly appropriate, 29 U.S.C. § 160(c). The affirmative requirement that a "Notice to Employees" be posted at all seventeen of respondent's stores within the loosely described Mobile metropolitan area causes us some pause. Strenuously objecting to the wide-spread posting requirement, respondent insists that the record reveals that the unfair labor practice findings made by the Board implicated only the manager and assistant manager of its store in Fairhope, Alabama (No. 34), the assistant manager of Store No. 46 in Mobile, and one employee of Store No. 45 in Spanish Fort. Therefore, respondent submits that the requirement of posting at the remaining fourteen stores is an unduly excessive and harsh remedy.

The strong surface appeal of this argument is undercut by the findings of the ALJ that since the unfair labor practices affected more than one of respondent's stores in the seventeen store bargaining unit in Mobile and Baldwin Counties, and because of the "close association" between that group of stores, the ends of the Act would best be achieved by requiring it to post such notices at all seventeen stores. This finding is supported by substantial evidence, both direct and inferential, in the record. Indeed, the "close association"

which precipitated this affirmative remedy is the logical result of the intermingling of the employees of most of respondent's stores at the luncheon and dinner meetings.

ENFORCED.