**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NEW ORLEANS BUS TRAVEL, INC., Respondent.**

No. 89–4009
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Sept. 15, 1989.

Aileen Armstrong, Judith Dowd, Dep. Assoc. Counsel, NLRB, Washington, D.C., for appellant.

Clifford H. Nelson, Jr., Wimberly, Lawson & Cobb, Atlanta, Ga., for appellee.

Hugh Frank Malone, Director, Region 15, NLRB, New Orleans, La., other interested parties.

Before POLITZ, GARWOOD, and JOLLY, Circuit Judges.

POLITZ, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order directing New Orleans Bus Travel, Inc. (the Company) to bargain with the union selected by its employees. The Company suggests that its refusal to bargain is motivated by a desire to secure judicial review of its objections to the certification election. Finding that the bargaining agent was certified properly, we grant enforcement.

### Background

The Company operates a Greyhound bus terminal in New Orleans, Louisiana. In an election held July 23, 1987, its employees voted 17 to 6 for representation by the Amalgamated Transit Union, Local 1600. The balloting was conducted in two sessions, from 7:00 a.m. to 8:00 a.m., and from 2:30 p.m. to 3:30 p.m. All but two of the employees in the bargaining unit voted; seven challenged ballots were not counted because they would not change the election results.

The Company filed five objections to the certification, only two of which are before this court. The Company presently complains that the employee voting list used at the morning session, and the polling place signs were temporarily out of the control of the Board agent supervising the election, and that "chain voting" may have occurred.

The first objection before us is based on this scenario. After the morning session the Board's agent returned to her office with the election materials. She took the ballots and ballot bag into her office but left the employee voting list and polling

place signs in her government car, which she parked in its customary place. The vehicle was taken out by unidentified persons so the agent conducted the afternoon voting session using a second employee voting list on which the Company and Union observers had noted the employees who had voted in the morning session. Later in the day the first list was retrieved. The election observers compared the two lists and verified that no one had voted twice.

The second objection before us involves an employee who marked his ballot and, mistakenly believing that he should leave it in the polling booth, pushed it into an opening below the writing surface. The agent could not recover the ballot and gave the employee a second ballot which was voted under challenge. That ballot was not counted. When the voting booth was returned to the agent's office her supervisor removed the marked ballot, sealed it in an envelope, and placed it in the file.

After an investigation the Regional Director recommended that the Board reject all five objections. The Company filed exceptions to the Regional Director's report and submitted evidentiary materials. The Board rejected three objections and ordered a hearing on two, one of which was later withdrawn by the Company. The hearing officer recommended rejection of the remaining objection; the Board agreed and certified the Union.

The National Labor Relations Act does not provide for direct judicial review of representation proceedings. *NLRB v. Klingler Electric Corp.*, 656 F.2d 76, 80 n. 2 (5th Cir.1981). To secure review the Company declined to bargain. The general counsel responded by charging an unfair labor practice and obtaining a summary judgment and an order directing the Company to bargain. The Board petitions this court for enforcement of that order pursuant to 29 U.S.C. § 160(e). The Company moved to supplement the record.

### Analysis

As a threshold matter, we deny the Company's motion to supplement the record. The exceptions to the report of the Region-

al Director are in the record, as is the memorandum of the Board agent. We decline to direct the Regional Director to transmit his investigative file. Our review is based on the record before the Board.

■ The Board has wide discretion in the supervision of representation elections. Our review is limited to determining whether its decision was reasonable and supported by substantial evidence. *NLRB v. Rolligon Corp.*, 702 F.2d 589 (5th Cir. 1983). The Company bore the burden of demonstrating to the Board unlawful acts that "materially affected the results of the election." *NLRB v. Claxton Poultry Co., Inc.*, 581 F.2d 1133, 1135 (5th Cir.1978).

The Company suggests three propositions in support of its first objection: (1) the Regional Director should have transmitted his investigative file to the Board; (2) the Board should have ordered a hearing; and (3) the temporary loss of the voting list raises an inference of coercive atmosphere. We find no merit in any of these suggestions.

■ The Company offers neither allegations nor proof of anything which would warrant factual review. There is no basis for the Board, or this court, to order the Regional Director to produce his investigative file on the election. *See Birmingham Ornamental Iron Co. v. NLRB*, 615 F.2d 661 (5th Cir.1980). The temporarily missing employee list was recovered. And as reflected by the affidavit of the Company's observer, a comparison of the employee lists used in the morning and afternoon voting sessions reflected no voting irregularity. Examination of the lists themselves was not mandated absent some basis to believe there was a disparity. In any event, this objection is not appropriately before the court. *Van Leer Containers, Inc. v. NLRB*, 841 F.2d 779 (7th Cir.1988); *see NLRB v. Wagner Electric Corp.*, 586 F.2d 1074 (5th Cir.1978) (objections waived if not raised in exceptions); *NLRB v. Rod–Ric Corp.*, 428 F.2d 948 (5th Cir.1970), *cert. denied*, 401 U.S. 937, 91 S.Ct. 922, 28 L.Ed.2d 216 (1971) (objection that should have been raised before election not pre-

served by objection in resultant unfair labor practice proceeding).

Nor has the Company presented any evidence of any interference with the outcome of the election which would entitle it to a hearing. *NLRB v. Claxton Manufacturing Co.*, 613 F.2d 1364 (5th Cir.), *modified*, 618 F.2d 396 (5th Cir.1980). It merely speculates that such acts could have occurred. That speculation beagle will not catch the rabbit. *NLRB v. Capitan Drilling Co.*, 408 F.2d 676 (5th Cir.1969).

Finally, the third suggestion about a coercive atmosphere at the election site is without record support and warrants no further discussion.

 The second objection, based on the employee's mistaken "deposit" of his ballot, is totally without merit. The Company's contention that the incident might reflect "chain voting" is nigh ludicrous. The purpose of a chain voting scheme is to "ensure that voters whose preference was in doubt voted for the choice of the ... leader." *Newport News Shipbuilding and Dry Dock Co.*, 243 N.L.R.B. 99, 102 L.R.R.M. 1051 (1979), *aff'd*, 608 F.2d 108 (4th Cir.1979). Historically, chain voting was used by big city political bosses, prior to the advent of voting machines, to make certain that voters performed as promised. But as the Board earlier observed, there was no evidence of any election tainted by chain voting in the thousands of elections conducted under the Board's supervision from 1935 to the time of the *Newport News Shipbuilding* decision. *Id.*, 243 N.L.R.B. at 109 n. 31, 102 L.R.R.M. 1052. A chain voting scheme would involve the following mise-en-scene:

> The leader starts the chain by giving a ballot already marked with the leader's selection to a voter, who then proceeds to the polling place, is checked in, gets a ballot from a Board agent, and proceeds into the voting booth. Inside the booth, the voter takes the marked ballot out of his pocket, puts the unmarked ballot in its place, leaves the booth, deposits the marked ballot in the ballot box, and leaves the polling place. The first link in the chain would then need to rendezvous with the leader to give him the unmarked ballot.
>
> The next prearranged link in the chain must then get his ballot, now marked by the leader, from him, and repeat the procedure. The chain goes in this manner—voter to leader to new voter to leader ad infinitum, or at least until the end of the election or until the chain is broken or finished, whichever comes sooner.

243 N.L.R.B. at 108, 102 L.R.R.M. at 1051–52.

There was no allegation and no evidence before the hearing officer or Board to support a finding of chain voting, only the Company's suggestion that it might have occurred. The Board's rejection of this objection was entirely appropriate.

The order of the Board is ENFORCED.