**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOOD FURNITURE MANUFACTURING COMPANY, A Wholly Owned Operating Division of Hood Industrial Park, Inc., Respondent.**

**No. 90–4309.**

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1991.

Rehearing and Rehearing En Banc Denied Sept. 25, 1991.

Collis Suzanne Stocking, Paul J. Spielberg, Deputy Asst. Gen. Counsel, Aileen Armstrong, Deputy Assoc. Gen. Counsel, Robert J. Englehart, N.L.R.B., Washington, D.C., for petitioner.

Timothy W. Lindsay, Louis A. Fuselier, Jerrald L. Shivers, Fuselier, Ott, McKee & Walker, Jackson, Miss., for respondent.

Hugh Frank Malone, Region 15, N.L.R.B., New Orleans, La., for other interested parties.

Before WISDOM, KING and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

The National Labor Relations Board (Board) petitions this court for enforcement of its order of November 21, 1989, directing Hood Furniture Manufacturing Company (Company) to bargain with the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO (Union). The Board found that the Company violated § 8(a)(1) and (5) of the National Labor Relations Act (NLRA) (29 U.S.C. § 158(a)(1) and (5)) by refusing to recognize and bargain with the Union following the Union's certification as the exclusive bargaining representative of an appropriate unit of the Company's employees. The Company's refusal to bargain is motivated by a desire to obtain judicial review of the Board's failure to sustain the Company's objections to the representation election, and, alternatively, the Board's refusal to order a full evidentiary hearing on the Company's objections. Finding that substantial evidence in the record supports the Board's decision to overrule the Company's election objections and certify the Union, and that the Board did not unreasonably or arbitrarily deny an evidentiary hearing, we grant enforcement.

## I.

On November 7, 1988, the Union filed a representation petition with the Board seeking certification as the collective-bargaining representative for a unit of the Company's employees. The Company's work force is approximately 96% black. Pursuant to a Stipulated Election Agreement between the parties, a secret ballot election was conducted on January 19, 1989, for the purpose of determining whether the Company's employees desired Union representation. Following the election, the tally of ballots showed 104 for Union representation and 103 against Union representation.[1]

The Company timely filed twelve objections to the election, ten of which are before this court on appeal. The Board's Regional Director conducted an administrative investigation of the Company's objections pursuant to 29 C.F.R. § 102.69(c), and issued a report recommending that all objections be overruled in their entirety and

---

**1.** In addition to the 207 valid votes, one ballot was declared void for ambiguity and 10 challenged ballots were declared invalid because they were cast by terminated employees.

that the Union be certified as the bargaining unit representative.

The Company filed timely exceptions to the Regional Director's Report, accompanied by nine affidavits and two supplemental affidavits, requesting that the election be set aside and a new election ordered. In the alternative, the Company requested that the Board order a hearing on its objections. The Board adopted the Regional Director's recommendation that the Company's objections be overruled and certified the Union.

Following the Union's certification, the Company has refused to bargain with it. The Union filed an unfair labor practices charge contending that the Company's refusal to bargain violated § 8(a)(1) and (5) of the NLRA. The Board's Regional Director issued a complaint based on this charge. The Company answered, admitting its refusal to bargain but denying the validity of the representation election. The Board granted the General Counsel's motion for summary judgment against the Company, finding that all issues presented either had been or could have been litigated in the underlying representation proceeding, and that the Company offered no new evidence nor alleged special circumstances. Accordingly, the Board found that the Company's refusal to bargain violated § 8(a)(1) and (5) of the NLRA.

The Board issued an order requiring the Company to cease and desist from unfair labor practices and directing the Company to bargain with the Union upon request, to embody any understanding reached in a signed agreement, and to post appropriate notice. The Board petitions this court for enforcement of its order pursuant to 29 U.S.C. § 160(e).

The issues to be decided on appeal are (1) whether the Board's failure to sustain the Company's objections in finding the Company violated § 8(a)(1) and (5) of the NLRA is supported by substantial evidence in the record; and (2) whether the Board acted unreasonably or arbitrarily in denying the Company a full evidentiary hearing on its objections to the certification election.

## II.

■ Enforcement of the Board's order depends on the validity of the Board's earlier decision to certify the Union. Congress has given the Board wide discretion in the conduct and supervision of representation elections, and the Board's decision warrants considerable respect from reviewing courts. *NLRB v. A.J. Tower Co.*, 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322 (1946); *NLRB v. Rolligon Corp.*, 702 F.2d 589, 592 (5th Cir.1983). Our review is limited to determining whether the Board has reasonably exercised its discretion, and if the Board's decision is reasonable and based upon substantial evidence in the record considered as a whole, our inquiry is at an end. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *NLRB v. New Orleans Bus Travel, Inc.*, 883 F.2d 382, 384 (5th Cir. 1989); *Rolligon*, 702 F.2d at 592; *NLRB v. Klingler Elec. Corp.*, 656 F.2d 76, 85 (5th Cir.1981). Representation elections are not lightly set aside. *NLRB v. Monroe Auto Equip. Co.*, 470 F.2d 1329, 1333 (5th Cir. 1972), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973). There is a strong presumption that ballots cast under specific NLRB procedural safeguards reflect the true desires of the employees. *Contract Knitter, Inc. v. NLRB*, 545 F.2d 967, 971 (5th Cir.1977); *NLRB v. Zelrich*, 344 F.2d 1011, 1015 (5th Cir.1965). Therefore, in challenging a representation election, the objecting party bears the entire burden of adducing prima facie facts sufficient to invalidate the election. *Klingler*, 656 F.2d at 79. Conclusory allegations or proof of mere misrepresentations or physical threats are insufficient to meet this heavy burden; specific evidence of specific events is required showing not only that the acts occurred, but also that they "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir.1969).

### A. *Improper Electioneering and Coercive or Threatening Conduct*

■ On appeal, the Company alleges in five of its objections that the Union or its

advocates engaged in improper electioneering and purposely created an atmosphere of fear and coercion. The Company complains that the Board agent who conducted the election permitted two terminated employees, Readus and Jackson, to electioneer in the immediate area of the voting booth and to make improper comments to employees who were waiting to vote. Affidavits stated that after voting, Readus and Jackson spoke with the Union observer near the doorway for a period of time somewhere between one and five minutes (affidavits varied). According to the affidavit of employee Kyle Renfrow, Readus and Jackson were laughing and "cutting up" when he went in to vote. Jackson then approached Renfrow and stated, "You know damn well the way you're supposed to vote," and told another voter the same and that they should "stick together." In his affidavit, Renfrow stated, "I voted the way I wanted to." Readus and Jackson had been told several times to leave the polling place, and finally left thirty seconds to one minute after the Board agent first instructed them to do so. The Company also complains that after leaving the polling place, Readus, Jackson, and another terminated employee walked around the plant speaking with various employees who had not yet voted, until they were escorted out of the plant by Company representatives. The Company presented no evidence as to the content of any of the conversations of the terminated employees.

Weighing all evidence in a light most favorable to the Company's position, the Regional Director found no violation of the *Milchem* rule, which requires the invalidation of an election when prolonged conversations occur between the parties to the election and employees waiting in line to vote. *Milchem, Inc.,* 170 NLRB 362 (1968); *see also NLRB v. Carroll Contracting & Ready–Mix,* 636 F.2d 111, 113 (5th Cir. 1981). He determined that the exchanges between Jackson and the two voters could not be considered "prolonged," and, furthermore, that there was insufficient evidence to establish that Jackson was an agent of the Union. *Milchem* only prohibits contact between an agent or representative of a party and an employee-voter. *Klingler,* 656 F.2d at 87–88. Finding the statements made by Jackson in the polling area were not fear-inspiring threats, but ambiguous at best, the Regional Director deemed them insufficient to invalidate the election. As to the laid-off employees visiting the working area after voting, the Regional Director found the Company produced no evidence of electioneering nor identified any employees in the plant with whom Readus or Jackson had spoken. Accordingly, the Regional Director found these allegations insufficient to destroy the atmosphere necessary for a free choice in the election and thus to warrant setting the election aside. We find the Regional Director's determinations to be supported by substantial evidence in the record.

■ The Company's claim that agents of the Union threatened employees with harm if they failed to vote for the Union is based on a single incident. One morning, to avoid a traffic tie-up, a white employee, last name Presley, decided to enter through the visitor's parking lot, and was approached by an unidentified handbiller. When Presley politely declined the literature, the handbiller called him a "white mother fucker," and, according to Presley's passenger, added that Presley had better vote "yes." The handbiller then swatted at Presley's car with the leaflets. The Company produced no evidence regarding the identity of the handbiller nor that his conduct was attributable to or authorized by the Union. Presley's affidavit stated the incident did not affect his vote in any way. The Regional Director found the alleged threat to be "isolated and de minimus," with no evidence showing that it was widely disseminated or created an atmosphere of fear or reprisals. *See NLRB v. White Knight Mfg. Co.,* 474 F.2d 1064, 1068 (5th Cir. 1973). Again, this determination is supported by substantial evidence in the record.

■ The Company also argues that on the day of the election, the Union distributed a "deliberately vague" handbill which stated "The Union, not the Company Will Know How you Vote." The Union admit-

ted distributing a handbill that stated "The Union *nor* the Company Will Know How You Vote" (emphasis added). The Company presented evidence that four individuals, only two of whom were eligible to vote, saw the "not" handbill. Other evidence adduced during the investigation disclosed that some employees received the "nor" handbill; others were uncertain which handbill they received, and still others received neither handbill. In examining the two handbills and the evidence presented, the Regional Director determined that the two documents seemed to be originally one and the same, and that some unknown person modified the "nor" handbill by adding a comma after the word "Union" and changing the "r" in "nor" to a "t." There was insufficient evidence to attribute the alteration to anyone acting on behalf of the Union. To invalidate an election, objectionable conduct not attributable to a party to the election and that is committed by unknown persons must be "so aggravated that a free expression of choice of representation is impossible." *Bush Hog, Inc.*, 173 NLRB 467 (1968), enf'd, 420 F.2d 1266 (5th Cir.1969). The Regional Director found the altered handbill did not meet this standard. Furthermore, the "not" handbill is ambiguous and contradictory because it also states "No one will Know How you Vote! it [sic] is a Secret Ballot Election." The official Notice of Election posted throughout the plant also emphasized the secret ballot, as did a handbill distributed by the Company. In addition, the ballot itself was marked "OFFICIAL SECRET BALLOT." Accordingly, we find the Board's decision, which overruled this objection because the event was insufficient to materially affect the outcome of the election, to be supported by substantial evidence.

The Company also complains that the Union improperly invited eligible voters to a "Pre–New Year's Party" three weeks before the election for the purpose of inducing them to vote for the Union. The Union provided free entertainment (recorded music), food, and beverages. Affidavits of certain employees in attendance establish that no gifts were awarded. Evidence adduced during the investigation reflects that neither the Company nor the election campaign was discussed at the party. There is no evidence that the party was intended to induce employees to vote for the Union. The Board's decision to overrule this objection is supported by substantial evidence that the Union's providing employees with free food, drinks, and music at a one-time social event was not improper or objectionable conduct. *See NLRB v. Delchamps, Inc.*, 653 F.2d 225, 228 (5th Cir. 1981).

Taken as a whole, all of the incidents focusing on improper conduct are isolated events involving unknown persons or other rank and file employees rather than Union representatives. In the absence of Union agency, it is possible to set aside an election only if the conduct of third parties "produced such a climate of tension and coercion that the employees were effectively precluded from making a free choice." *NLRB v. Singleton Packing Corp.*, 418 F.2d 275, 281 (5th Cir.1969), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). The Company failed to produce any evidence sufficient to make a prima facie showing that the atmosphere of free choice had been destroyed by the alleged conduct. Accordingly, we hold that the Board reasonably concluded that the coercive events complained of, even when taken as a whole, were insufficient to set aside the election.

*B. Racial Prejudice*

Three of the Company's allegations assert that the Union improperly appealed to the racial prejudice of the Company's 96% black work force for the purpose of inflaming racial feelings of the employees. The Company alleges that it was not aware of the significance of the Union's proposed election date and was thereby "maneuvered" into holding the election during the week of the Martin Luther King holiday, even though it voluntarily agreed to the date in the Stipulated Election Agreement without first consulting a calendar. Because the Company did not exercise either of its options to propose an alternate date

or to decline to enter into the stipulation, the Board's ruling that the Company was precluded from objecting to the stipulated date was proper.

■ In further support of its allegation that the Union's campaign was racially oriented, the Company presented a two-sided fold-out poster depicting events in the life of Martin Luther King and an unsigned letter supporting the Union bearing the typed name of Coretta Scott King, both used as campaign literature by the Union. The Regional Director noted that the Board will set aside an election when a party launches a campaign to exacerbate racial feelings by making irrelevant, inflammatory appeals to racial prejudice. *Sewell Mfg. Co.*, 138 NLRB 66 (1962); *see also NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 926 (5th Cir.1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977). After examining the campaign material in question, the Regional Director found the materials to be proper campaign propaganda not rising to the level of "deliberate and sustained appeals to racial prejudice of the type condemned by the Board."

■ The Company also complains that the six or seven whites working for the Company were intentionally excluded from the campaign. The Regional Director found the evidence did not establish that this was due to the Union's conduct. According to affidavit testimony of white employees, the lack of white involvement in the campaign appeared to be due to the fact that a majority of the white employees chose not to align themselves with the Union and declined to accept campaign literature. The isolated remark made by an unidentified black handbiller to a white employee who declined to accept campaign literature likewise was found insufficient to void the election for racial reasons. In our opinion, the Board's decision to overrule all of the Company's objections predicated on racial grounds is supported by substantial evidence in the record. The

Company failed to make a prima facie showing that needlessly inflammatory racial considerations formed the core of the Union's campaign and that the existing pre-election conditions rendered a free election impossible. *See Sumter Plywood*, 535 F.2d at 925.

## C. Religious Objector

■ Following the election, the Company presented an affidavit of an employee, Marshall, who was precluded from casting a formal ballot because of his religious convictions. Marshall is a Jehovah's Witness. Marshall's affidavit indicated that if he could have voted, he would have voted against the Union. The Company argues that the Board should accept this affirmation and count Marshall's intent, as evidenced in his affidavit, as a "no" vote to tie the election. The Regional Director overruled this objection based on the Board's long-standing statutory policy enunciated in § 9(c) of the NLRA (29 U.S.C. § 159(c)) that employee choice of representation must be made by secret ballot. To begin accepting signed affidavits as valid ballots would completely undermine the Board's statutory policy of secrecy.[2] Furthermore, while Marshall expressed in his affidavit how he would have voted, nowhere did he indicate a desire that his affidavit be counted as a vote against the Union.

The Company complains that to ignore Marshall's desire not to be represented by the Union solely because his religious convictions prevented him from voting contradicts Board policy. This court views it as contrary to Board policy to count as valid the "vote" of one who comes forward after the results of an election are known, claiming that he would have voted for the losing party and that his vote should now be counted in the official tally, especially where one vote would change the outcome of the election. The Board found no basis in this case for deviating from its established voting practices, and we believe its

---

**2.** The importance attached to the secret ballot requirement is expressed in *J. Brenner & Sons, Inc.*, in which the Board said that it is "under a duty to preserve" the secret ballot and that the

secret ballot "is a matter of public concern, rather than a personal privilege subject to waiver by the individual voter." 154 NLRB 656, 659 n. 4 (1965).

decision not to count Marshall's affirmation as a valid vote was reasonable.

### D. Evidentiary Hearing

■ The Company argues in the alternative that failure to direct an evidentiary hearing on its objections was unreasonable and arbitrary, and deprived the Company of an adequate opportunity to carry the burden of proving its case. It is well settled that a party challenging a representation election is not entitled to a post-election evidentiary hearing as a matter of right. *Golden Age*, 415 F.2d at 32–33; *NLRB v. Smith Indus., Inc.*, 403 F.2d 889, 894 (5th Cir.1968). Such hearings are required as a matter of due process only when the party challenging the election raises "substantial and material factual issues" supported by a specific proffer of evidence which, if true, would be sufficient to set aside the election. *Gulf Coast Automotive Warehouse Co. v. NLRB*, 588 F.2d 1096, 1098 (5th Cir.1979); 29 C.F.R. § 102.-69(d). In the absence of such issues, an administrative investigation is sufficient. *Golden Age*, 415 F.2d at 32.

Whether the objecting party has made an adequate showing to require an evidentiary hearing is a question of law ultimately for this court to decide, but considerable weight must be assigned to the NLRB's determinations regarding the existence or nonexistence of substantial and material factual issues. *NLRB v. Claxton Mfg. Co.*, 613 F.2d 1364, 1365 (5th Cir.1980). In determining whether the Company has made out a prima facie case to require a hearing as a matter of due process, we must con-

fine our analysis to the contents of the affidavits submitted by the Company to the Regional Director. *Id.* *Claxton*, 613 F.2d at 1366.

In this case, the Company failed to convince either the Regional Director or the Board that its objections raised substantial and material factual issues that would warrant an evidentiary hearing. Essentially, the Board found that even if the alleged events occurred, the Company's evidence failed to reveal any adverse effect upon the atmosphere necessary to preserve the employees' exercise of free choice in the election. Furthermore, the Company's argument that it is entitled to an opportunity to provide further evidence in support of its objections at an evidentiary hearing is tantamount to an admission that the evidence it submitted to the Regional Director fell short of the prima facie proof required to invalidate the election or require a hearing. It is not the Board's responsibility to seek out evidence that would warrant setting aside an election. *NLRB v. Gooch Packing Co., Inc.*, 457 F.2d 361, 363 (5th Cir. 1972); *United States Rubber Co. v. NLRB*, 373 F.2d 602, 606 (5th Cir.1967).

We recognize that in close vote election situations the Board is required to scrutinize charges particularly carefully which in other elections would constitute immaterial or insubstantial objections. *Gooch Packing*, 457 F.2d at 362. After carefully reviewing the record, this court finds no substantial and material factual issues supported by specific proffers of evidence that, if true, would be sufficient to set aside the election.[3] We believe that the Regional

---

**3.** The dissent would deny enforcement and remand this cause for an evidentiary hearing. The dissent considers the allegations of improper activity by Readus and Jackson, the threatening conduct of the handbiller, and the misleading handbills potentially to provide sufficient basis to invalidate the election. The dissent cites several cases which hold that we should scrutinize closely certification elections which are decided by close margins. *Claxton*, 613 F.2d at 1366; *Gooch Packing*, 457 F.2d at 362; *accord NLRB v. Nixon Gear, Inc.*, 649 F.2d 906, 914 (2d Cir.1981); *Henderson Trumbull Supply Corp. v. NLRB*, 501 F.2d 1224, 1230 (2d Cir. 1974).

The Board specifically considered the fact that this election was close when it decided to

deny a hearing. The Board took all of the facts that the Company supported with competent summary judgment evidence as true. It discounted only those pleadings which were merely conclusory allegations. The Board determined that the Company had provided insufficient evidence to grant a hearing. The only evidence that the Company produced that connected the Union or any of its agents to the alleged violations was evidence regarding the handbill incident with the white employee. The white employee allegedly involved in that incident, however, stated that the incident did not change the way he voted.

In all of the cases cited by the dissent, the challenging party has provided specific facts

Director and the Board sufficiently scrutinized all charges in making their decision. The Company failed to meet its burden to come forward with specific evidence which established a prima facie case that there was any adverse effect upon the atmosphere of free choice. Accordingly, we hold that the Board did not act unreasonably or arbitrarily in denying the Company a full evidentiary hearing on its objections.[4]

## III.

The order of the Board is ENFORCED.

BARKSDALE, Circuit Judge, dissenting:

I respectfully dissent. While agreeing with parts II.B. (racial prejudice) and II.C. (religious objector) of the majority opinion, I believe that the issues of improper electioneering and coercive or threatening conduct discussed in part II.A. compel a remand for an evidentiary hearing by the Board. The thorough majority opinion does not accord sufficient weight to the closeness of the election.

As the majority notes, the Board's discretion in determining whether to hold an evidentiary hearing in this instance is not unlimited. "Due process requires the Board to grant 'a [post election] hearing to a losing party who has supplied prima facie evidence raising substantial and material issues that would warrant setting the election aside.'" *NLRB v. Claxton Mfg. Co.,* 613 F.2d 1364, 1365 (5th Cir.1980) (citations omitted). As the majority also notes, whether an adequate showing has been made is a question of law. *Id.*

Most assuredly, to obtain a hearing, the losing party's "affidavits must contain 'specific evidence of specific events from or about specific people ...': conclusory allegations are not sufficient." *Id.* at 1366 (citations omitted). *See also NLRB v. Gooch Packing Co.,* 457 F.2d 361, 362 (5th Cir.1972) ("The Company is required to supply the Board with exact and non-conclusory facts describing specific events from or about specific people which constitute a prima facie case of election irregularities."). "Moreover, an election may be set aside only if the objectionable activity, when considered as a whole, either tended to or did influence the outcome of the election. ... Such a showing is particularly difficult to make where ... the union [wins] by a wide margin." *Claxton,* 613 F.2d at 1366 (citations omitted). Where, however, as here, an election turns on one vote out of 207, the showing required to obtain the hearing is, obviously, much less difficult to make.

An election result similar to that at issue here took place in *Gooch Packing,* where "the union won by the least possible whisker, 77 to 75—if one vote was swayed by impermissible union conduct, then no certification could be made." 457 F.2d at 362. Regarding the necessity of a hearing, the court noted:

[t]he question of whether a Company has presented the requisitely specific facts to raise substantial and material factual issues must always be answered *in light of the context in which it is posed. There can be no abstract rules. The closeness of the election is obviously relevant.* Conduct which could have affected only a few voters may not have any effect on the ultimate outcome of the election in cases where the vote disparity is large, but the same conduct in a close

---

4. that directly connect the alleged illegal activity to the other party. In this case, the Board correctly stated that it must apply a different standard in evaluating allegedly illegal conduct which is not attributable to a party to the election. In these situations, an election will be set aside only "where coercive and disruptive conduct is so aggravated that a free expression of choice of representation is impossible." *Bush Hog, Inc. v. NLRB,* 420 F.2d 1266, 1269 (5th Cir.1969); *see NLRB v. Heavy Lift Serv., Inc.,* 607 F.2d 1121, 1123 (5th Cir.1979), *cert. denied,* 449 U.S. 822, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980).

Thus, after reviewing the record and giving considerable weight to the Board's determinations regarding the existence or nonexistence of substantial and material factual issues, *Claxton,* 613 F.2d at 1365, we hold that the Company has failed to make an adequate showing that an evidentiary hearing was required.

4. We have also reviewed the Company's other objections not discussed here and have likewise concluded that the Board's decision overruling them is supported by substantial evidence in the record.

election could be determinative. *In close vote election situations the Board is required to particularly and carefully scrutinize charges which in other cases would constitute immaterial or insubstantial objections to the election and, when the existence of hard evidence of irregularities is supplied, a full hearing to get at the truth should be accorded.*

*Id.* (emphasis added).

In *Gooch Packing,* a company employee and union organizer, on the morning of the election, informed another employee that she had earned a higher wage while working for a rival union company. Two or three other employees heard this remark. Submitted evidence reflected that it was "highly unlikely" the employee had earned the wage rate claimed. As the court noted, "[i]f just one of these persons was influenced to vote for the union by this remark, then the union has won an election it should not have won. If supplied with adequate evidence that these facts existed, the Board should have conducted a hearing to sort substance from rumor and conjecture." *Id. See also NLRB v. Nixon Gear, Inc.,* 649 F.2d 906, 914 (2d Cir.1981) ("[t]he need for a hearing is particularly acute" in an election decided by two votes because "even minor misconduct cannot be summarily excused on the ground that it could not have influenced the election"); *Henderson Trumbull Supply Corp. v. NLRB,* 501 F.2d 1224, 1230 (2d Cir.1974) (stating an identical proposition for an election decided by one vote).

As discussed in part II.A. of the majority opinion, the Company's affidavits did not contain conclusory allegations, but instead contained the requisite "specific evidence of specific events from [and] about specific people". If just one person was influenced by the improper conduct and comments of Readus or Jackson at the polling area, or by the threatening conduct of the handbiller described by employee Presley, or by the misleading handbills which insinuated that the union (but not the Company) would know how employees voted or that labeled the Company "liars" and "thieves", then the union has won an election that it should not have won. Most certainly, at the very least, such objectionable activity, which must be "considered as a whole," could "tend to ... influence the outcome of [an] election" decided by but a single vote. *Claxton,* 613 F.2d at 1366. Because the Company has raised material and substantial factual issues of improper electioneering and coercive conduct, "a full hearing to get at the truth should be accorded." *Gooch Packing,* 457 F.2d at 362.

The majority holds that the Company failed to produce specific evidence which established a prima facie case that the election could have been adversely affected. In the light of the extremely close vote, I respectfully disagree. I would deny the petition for enforcement of the order and remand for an evidentiary hearing.