United States Court of Appeals,

Fifth Circuit.

No. 96-60336.

SELKIRK METALBESTOS, NORTH AMERICA, ELJER MANUFACTURING, INC.,
Petitioner-Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.

July 7, 1997.

Petition for Review and Cross-petition for Enforcement of an Order of the National Labor Relations Board.

Before WIENER and PARKER, Circuit Judges, and LITTLE,[*] District Judge.

PER CURIAM:

The petitioner, Selkirk Metalbestos, North America, Eljer Manufacturing, Inc. ("Eljer") petitions this court for review of an order of the National Labor Relations Board ("NLRB" or "Board") relating to unfair labor practice charges. The Board cross-petitions for enforcement of its order. We grant the petition for review and deny the petition for enforcement.

*FACTUAL AND PROCEDURAL HISTORY*

Eljer is a corporation engaged in the manufacturing of equipment for heating and cooling systems at its plant in Nampa, Idaho. The company has recognized the Sheet Metal Workers Local 213, AFL-CIO (the "union") as the collective bargaining representative of the production and maintenance employees since 1977. Since that time, there have been successive collective

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

1

bargaining agreements between Eljer and the Union, the most recent of which was in effect from July 8, 1988 through July 8, 1991.

In June 1991, Eljer and the Union began negotiations for a successor agreement, with the final bargaining session being held on February 24, 1993; however, the parties were unable to agree on a new contract. The points on which the parties were unable to agree were wages, the retroactivity of any wage increase, personal holidays, the retirement income benefits plan, and Eljer's demand that each employee make a monthly contribution or "copayment" toward the cost of his health insurance plan.

On January 5, 1993, during the negotiations, the union's regional director and negotiator sent a letter to Eljer's vice-president stating that because the health plan copayment remained a roadblock, the union needed information related to current and projected health insurance costs to the company and the employees. On January 15, 1993, the vice-president responded to the union's request, stating that it was under no legal obligation to open confidential company records and would not provide the information requested.

Prior to the final bargaining session between Eljer and the union, a petition was filed with the Board's regional office seeking to decertify the union as the collective bargaining representative of Eljer's unit employees. A decertification election was scheduled for April 15, 1993. During the period preceding the April 15 election, Eljer conducted a campaign urging employees to vote to decertify the union. As part of the campaign,

2

Eljer's management posted opposition notices on the bulletin board, made speeches to employees, corresponded in writing to employees, and offered responses to employee questions which were read aloud to unit employees.

On April 15, the decertification election was conducted and the employees voted 73 to 68 to decertify the union as the employees' collective bargaining representative. Around April 20, the union filed objections with the Board alleging that Eljer had committed unfair labor practices during the campaign in violation of section 8(a)(1) of the National Labor Relations Act (the "Act"), 29 U.S.C. § 158(a)(1), and that such had affected the election's outcome. On May 26, 1993, the Board's Regional Director issued a decision and order finding merit in certain of the union's election objections and ordered that the election be set aside and a new election conducted.

Shortly after the April 15 election and the filing of the objections by the union, Eljer withdrew its recognition of the union and refused to negotiate further with the union. It subsequently introduced a new grievance and arbitration procedure that differed from the procedure in the collective bargaining agreement. Eljer also implemented a previously proposed wage increase as well as health insurance changes over the union's objections. Following Eljer's actions, the union filed further charges that Eljer refused to bargain in good faith by not providing the union with relevant requested information and by implementing the above actions all in violation of sections 8(a)(1)

3

and (5) of the Act, 29 U.S.C. § 158(a)(1) and (5).

Based on the foregoing, the Board ordered Eljer to cease and desist the unfair labor practices and to cease and desist from restraining or coercing employees in the exercise of the rights guaranteed them in section 7 of the Act,[1] 29 U.S.C. § 157. The Board also ordered Eljer to recognize and bargain with the union, to provide the Union with updated health plan information, to rescind the changes to the grievance and arbitration process, and to rescind the health insurance copayment and reimburse the copayments already deducted from employee paychecks. Eljer was also required to post copies of a remedial notice.

Eljer now petitions this court for review of Board's order, asserting that it had no legal duty to provide the requested

---

[1] In adopting the administrative law judge's ("ALJ" 's) decision in part, the Board found that Eljer violated sections 8(a)(1) of the Act by committing unfair labor practices during the election to decertify the Union, specifically by telling employees that the Union had prevented them from receiving a wage increase; by promising employees that they would receive a retroactive wage increase if they voted to decertify the Union; by implicitly promising employees that they would be given a 401(k) plan; and by threatening employees with adverse consequences if the union prevailed in the vote.

The Board also reversed the ALJ in part and found that Eljer violated section 8(a)(1) of the Act by promising employees a plan for the handling of their complaints if they voted to decertify the Union.

The Board additionally found that Eljer violated sections 8(a)(1) and (5) of the Act by refusing to provide the Union with requested health benefit information. Finally, the Board found that various post-election actions by Eljer violated sections 8(a)(5) and (1) of the Act: withdrawing recognition of the union, unilaterally making changes in the contractual grievance and arbitration process, and unilaterally implementing a copayment requirement.

information to the union during the bargaining process. Eljer also contends that the Board erred by finding that its actions and statements constituted unfair labor practices under the Act, because its statements and actions were neither coercive nor threatening, the statements constituted protected free speech, and it had a good faith doubt as to the union's status in representing the unit employees following the election. The Board cross-petitions for enforcement of its order.

*DISCUSSION*

This court reviews the NLRB's factual determinations for substantial evidence. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); *NLRB v. Cal-Maine Farms, Inc.,* 998 F.2d 1336, 1339 (5th Cir.1993). The Supreme Court has defined substantial evidence as "more than a scintilla. It means such relevant evidence as a reasonable mind would accept to support a conclusion." *Universal Camera Corp.,* 340 U.S. at 477, 71 S.Ct. at 459. In determining whether the NLRB's factual findings are supported by the record, we do not make credibility determinations or reweigh the evidence. *Cal-Maine Farms, Inc.,* 998 F.2d at 1339-40 (citing cases).

In cases in which we review the Board's legal determinations, the Board's determination must be affirmed if reasonable, consistent with the Act and based on factual findings supported by substantial evidence. *Nat'l Fabricators, Inc. v. NLRB,* 903 F.2d 396, 399 (5th Cir.1990) (citing cases).

A. Setting Aside the Decertification Election

5

Where unfair labor practices that violate section 8(a)(1) of the Act occur prior to an election, the Board has discretion to set aside the election on the basis of the employer's pre-election conduct. *NLRB v. Groendyke Transport, Inc.,* 493 F.2d 17 (5th Cir.1974). The Board has wide discretion in its supervision of representation elections. Our review is limited to determining whether its decision was reasonable and is supported by substantial evidence. *NLRB v. Hood Furniture Mfg. Co.,* 941 F.2d 325, 328 (5th Cir.1991); *NLRB v. New Orleans Bus Travel, Inc.,* 883 F.2d 382, 384 (5th Cir.1989). Representation elections are not lightly set aside. *Hood Furniture,* 941 F.2d at 328. The party challenging the election must demonstrate that unlawful acts materially affected the results of the election. *New Orleans Bus Travel,* 883 F.2d at 384. In challenging a representation election, the objecting party bears the entire burden of adducing *prima facie* facts sufficient to invalidate the election. *Hood Furniture,* 941 F.2d at 328. Conclusory allegations or proof of mere misrepresentations or physical threats are insufficient to meet this heavy burden. *Id.* Specific evidence of specific events is required that shows not only that the acts occurred, but also that they "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *Id.* (quotation and citation omitted).

The union makes three suggestions as support for its contention that Eljer engaged in unfair labor practices which affected the outcome of the election: (1) that Eljer coerced its

6

employees by threatening bad and serious consequences if they selected the union as their representative for collective bargaining; (2) that it promised employees a retroactive wage increase, a plan for handling their complaints, and implicitly promised a pension plan if the union was not selected; and (3) that it made statements to employees that the union had prevented them from receiving a pay raise. As we explain below, the NLRB's reliance on these instances as support for ordering a new election was unreasonable because they did not constitute unfair labor practices in violation of section 8(a)(1) of the Act. Given such, we must indulge the strong presumption that ballots cast under specific NLRB procedural safeguards reflect the true desires of the employees and deny the Board's petition for enforcement of its order requiring a new election. *See Hood Furniture,* 941 F.2d at 328.

### *1. Conduct Preceding Election*

The Board found that prior to holding the decertification election Eljer engaged in acts and conduct violative of section 8(a)(1) of the Act through coercive and threatening pre-election statements and by way of promises of benefits made to influence the outcome of the election. It specifically found that Eljer threatened its employees with negative consequences and unspecified harm if they voted for continued representation by the union; promised employees a retroactive wage increase and a plan for handling their complaints, and implicitly promised a pension plan if employees did not select the union; and stated to employees

7

that the union had prevented them from receiving a pay raise.

Eljer argues that the Board erred, contending that the campaign statements were neither coercive nor threatening, and that its statements and bulletin board postings constituted protected free speech under section 8(c) of the Act.

Under section 8(a)(1) of the Act, it is an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [section 7 of the Act]." 29 U.S.C. § 158(a)(1). At the same time, section 8(c) of the Act provides that an employer has the right to express "any views, argument, or opinion" so long as "such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). The Supreme Court has noted that section 8(c) "manifests a congressional intent to encourage free debate on issues dividing labor and management," *Linn v. United Plant Guard Workers of Am.,* 383 U.S. 53, 62, 86 S.Ct. 657, 663, 15 L.Ed.2d 582 (1966), while at the same time does not "serve this interest by immunizing all statements made in the course of a labor controversy," *Id.* at 63 n. 5, 86 S.Ct. at 663 at n. 5.

### a.

In analyzing an employer's statements for promised benefits, there is no requirement of an express statement that particular benefits would be given in exchange for a vote to decertify. *Dow Chem. Co., Texas Div. v. NLRB,* 660 F.2d 637, 644 (5th Cir.1981). Instead, the Act is violated by statements from which promises may reasonably be inferred. *Id.*

8

The Board found that Eljer promised the Union employees a retroactive wage increase and a plan for handling their complaints, and implicitly promised them a pension plan if they did not select the Union.

As to the Board's determination regarding whether a plan for handling employee complaints was promised as a benefit, the plant manager prefaced his statement on that issue—that without a union, he would discuss with employees the development of a plan for handling complaints—with a clear disclaimer that it would be illegal to promise that there would be an employee committee to review complaints. In addition, the plant manager set forth no specific grievance procedure. The Board was unreasonable in its determination that such constituted an inferable promise of a grievance or complaint procedure.

With respect to the Board's finding that Eljer made an implied promise that it would provide each employee with a 401(k) savings plan, the Board was also unreasonable. While the plant manager stated that "every employee not represented by the Union has a 401(k) plan," he also stated that "I cannot promise that there will be a 401(k) plan in this plant if the Union is voted out. It would be illegal for me to promise that." The statement regarding the unrepresented employees' 401(k) plan was a protected statement of fact which was followed by an overt disclaimer of any promise. "Section 8(c) of the Act is completely devoid of meaning unless it permits an employer to portray its practice with respect to its unrepresented employees so that they could decide whether

9

they wanted to secure unrepresented status." *Dow Chem.,* 660 F.2d at 644.

### b.

The Board found that Eljer's comment that the Union had prevented the employees from receiving any pay raise was a violation of section 8(a)(1) of the Act. While immediately preceding the election, the plant manager stated and posted the company's position that without the union, Eljer could implement a pay raise, the Board was unreasonable in regarding such as an implied promise of a benefit. The statements regarding a pay raise related to a statement of the recognized fact that Eljer had made an offer of a wage increase, to which the union had not agreed. Section 8(c) protects the right of an employer to make truthful statements of existing facts. *Dow Chem.,* 660 F.2d at 644. In addition, the plant manager later stated that he could not "promise any retroactivity if the Union is voted out."

### c.

An employer violates section 8(a)(1) when the employer's questions, threats or statements tend to be coercive. *NLRB v. Brookwood Furniture, Div. of U.S. Indus.,* 701 F.2d 452, 459 (5th Cir.1983). "The coercive tendencies of an employer's conduct must be assessed within the totality of circumstances surrounding the occurrence at issue." *Id.* An unlawful threat is established if, under the totality of the circumstances, an employee could reasonably conclude that the employer is threatening economic reprisals if the employee supports the union. *Id.* at 459. Given

10

the totality of Eljer's statements and the surrounding circumstances, the Board's determination that Eljer threatened its employees with retaliation if they selected the union as their representative was unreasonable. While Eljer stated that there would be negative consequences to voting for the union, the plant manager also communicated to employees that each employee was entitled to his opinion and that one's vote would not result in retaliatory discrimination. There is no surprise in Eljer's expressed desire for the union's decertification and there were no accompanying campaign statements that would imbue Eljer's predictions of negative consequences with a more sinister meaning. *See Dow Chem.,* 660 F.2d at 644.

d.

Finally, we note that our conclusion that the Board was unreasonable in the above recited unfair labor practices findings derives from the context of this representation election. This union had represented these employees for many years so that the employees were familiar with and well-informed of the union's and management's spokespersons, as well as what those parties had provided and could be trusted to provide (or not to provide) in the future. This decertification election of a long-time union bargaining agent was, of course, a situation distinct from a first-time election to unionize an employer.

*2. Request for Health Plan Information*

Eljer asserts that it did not violate section 8(a)(1) and (5) of the Act when it failed to provide health plan costs in response

11

to the union's request. Eljer contends that because it had previously provided the union with information in August 1991, it was thus not compelled to provide any more information concerning the health plan, and, alternatively, the union's request was overly vague and broad.

It is an "unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees...." 29 U.S.C. § 158(a)(5). Under this duty to bargain, an employer has a duty "to provide information that is needed by the bargaining representative for the proper performance of its duties." *NLRB v. Leonard B. Hebert, Jr. & Co., Inc.,* 696 F.2d 1120, 1124 (5th Cir.1983) (quoting *NLRB v. Acme Indus. Co.,* 385 U.S. 432, 435-36, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967)). An employer's refusal to furnish information relevant to a union's negotiation or administration of a collective bargaining agreement may constitute a breach of the employer's duty to bargain in good faith. *Id.* The key inquiry is whether the information sought by the union is relevant to its duties. *Id.*

Among the union's requests was the following statement: "The union must have all pertinent information with respect to present and projected [insurance] cost to both the company and the employees." As we have explained before, the Supreme Court has adopted a liberal, discovery-type standard by which the relevancy of the requested information is judged. *Id.* Even assuming a proper production request and the presumptive relevance of insurance costs generally, Eljer rebutted any presumption of relevance for the

12

requested information by responding to the union's request with the fact that the information had already been disclosed eighteen months previous and thus no additional information should be needed by the union; any such information was irrelevant. The union failed to show how its duties were impaired by the lack of any more current information that may have been available, *i.e.,* that any existing information was indeed relevant to the bargaining issue. *See Id.* at 1124. Therefore, we find unreasonable the Board's determination that Eljer's previous production of insurance information did not satisfy the union's request and was thus an unfair labor practice.

B. Eljer's Withdrawal of Recognition of the Union and Unilateral Changes

Eljer contends that the Board erred by finding that it violated section 8(a)(1) and (5) of the Act by withdrawing recognition from the union, by unilaterally making changes in the contractual grievance and arbitration procedure, and by implementing a health insurance copayment requirement. Eljer asserts that it had a good faith doubt as to the union's status in representing the unit employees following the decertification election and thus its actions were consistent with the Act. The Board counters that Eljer unlawfully withdrew recognition of the Union, and that Eljer failed to meet its statutory bargaining obligation when it unilaterally changed its employees' terms of employment.

It is a well-accepted rule that an employer has no duty to bargain when it has a good faith and reasonable doubt of a union's

13

continued majority status. *See, e.g., Dow Chem.,* 660 F.2d at 656-57. The employer must demonstrate by clear and convincing evidence, *NLRB v. A.W. Thompson, Inc.,* 651 F.2d 1141, 1143 (5th Cir.1981), its good faith belief, founded on a sufficient objective basis, that the union no longer represented a majority of the employees. *United Supermarkets, Inc. v. NLRB,* 862 F.2d 549, 554 (5th Cir.1989).

Because the Board was unreasonable in its findings of unfair labor practices, as we have explained in the preceding discussion, the Board could not reasonably conclude that Eljer violated sections 8(a)(5) and (1) of the Act by withdrawing recognition from the union and subsequently instituting the copayment and grievance procedure. The election results provided Eljer with a sufficient objective basis for its good faith doubt that the union no longer represented the majority of the employees, and thus it was relieved of its duty to bargain under the Act. *See Dow Chem.,* 660 F.2d at 654, 656-57 (holding that employees' statutory right to free choice under section 7 of the Act would be abrogated by requiring a continued duty to bargain after union lost fair decertification election and restating rule that employer has no duty to bargain when it has a good faith and reasonable doubt of union's continued majority status); *see also Hood Furniture,* 941 F.2d at 328 (noting strong presumption that ballots cast under specific NLRB procedural safeguards reflect employees' true desires).

*CONCLUSION*

For the foregoing reasons, Eljer's petition for review is

14

GRANTED, the Board's order and decision are VACATED and the Board's petition for enforcement is DENIED.